611 F.2d 450
 Fed. Sec. L. Rep. P 97,170
James R. ROBERTS, Appellant, on behalf of himself and all
others similarly situated
v.
MAGNETIC METALS COMPANY; Magmetco, Inc.; D. C. Langworthy
and Butcher & Singer, Inc.
 No. 79-1326.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 5, 1979.
Decided Nov. 14, 1979.
 
 Philip Stephen Fuoco, Haddonfield, N. J., Richard D. Greenfield, Sterling H. Schoen, Jr. (argued), Robert P. Frutkin, Gilbert F. Ashley, Greenfield & Schoen, Bala Cynwyd, Pa., for appellant.
 Arthur Makadon (argued), John B. Langel, Philadelphia, Pa., for appellees Magnetic Metals Company, Magmetco, Inc. and Mr. David C. Langworthy; Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.
 Patrick W. Kittredge, Roslyn G. Pollack (argued), Philadelphia, Pa., for appellee Butcher & Singer, Inc.; Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., of counsel.
 Before SEITZ, Chief Judge, and GIBBONS and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 On January 5, 1978, James R. Roberts filed a complaint, individually and as a class representative, charging Magnetic Metals Company (Magnetic), Magmetco, Inc. (Magmetco), David C. Langworthy, and Butcher & Singer, Inc. (Butcher) with violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a) (1976), Rules 10b-5 and 14a-9 promulgated thereunder, 17 C.F.R. §§ 240.10b-5, 240.14a-9 (1978), and common law fraud. The transaction complained of is a merger of Magnetic, a New Jersey corporation, into Magmetco, a Pennsylvania corporation, approved by stockholder vote on June 25, 1975, as a result of which those Magnetic stockholders unallied with the Langworthy interests received $6.50 in cash for each share of Magnetic stock tendered, while those Magnetic stockholders allied with the Langworthy interests received Magmetco stock. The district court dismissed the complaint, holding that the federal law claims were time-barred by N.J.S.A. 49:3-71(e) (1970), a provision modeled on the Uniform Securities Act § 410(e), that plaintiff had not adequately alleged facts which would toll the application of that time-bar on grounds of fraudulent concealment, and that the pendent state common law breach of fiduciary duty claim would not, under the circumstances, be entertained.[1] This appeal followed. We conclude that the governing statute of limitations for the federal law claims is not N.J.S.A. 49:3-71(e), but N.J.S.A. 2A:14-1 (Supp.1979). Thus we reverse. Since the latter statute provides a six-year period within which to bring an accrued cause of action we have no occasion to discuss the fraudulent concealment issues.
 
 
 2
 No federal statute imposes an express limitation upon actions brought under sections 10(b) and 14(a) of the Securities Exchange Act. In such circumstances a federal court must apply the limitations law of the state in which it sits. Johnson v. Railway Express Agency, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 703-05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Cope v. Anderson, 331 U.S. 461, 463, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Holmberg v. Ambrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed.2d 743 (1946); Gelman v. Westinghouse Elec. Corp., 556 F.2d 699, 701 (3d Cir. 1977); Kubik v. Goldfield, 479 F.2d 472, 477 n. 12 (3d Cir. 1973); Loss, Securities Regulation 1771-72 (2d ed. 1961). When Congress has been silent on the applicable limitations period federal courts have presumed that its intended policy with respect to repose is deference to the policy of repose of the forum state, rather than national uniformity. Holmberg v Ambrecht, 327 U.S. at 395, 66 S.Ct. 582; Rawlings v. Ray, 312 U.S. 96, 97, 61 S.Ct. 473, 85 L.Ed. 605 (1940); Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241 (1906); Campbell v. Haverhill, 155 U.S. 610, 613-621, 15 S.Ct. 217, 39 L.Ed. 280 (1895). The starting point, therefore, for determining applicable state statutes of limitations is to inquire whether, assuming the operative facts alleged in the complaint, a state court would entertain an action for the relief sought; in this case the award of money damages. If it would do so, no state policy of repose is implicated, and no deference with respect to a federal law basis for recovery growing out of those operative facts is appropriate.
 
 
 3
 What Mr. Roberts alleges is that in May of 1975, when he held 600 shares of Magnetic, a publicly held corporation, eighty-four percent of which was controlled by Langworthy interests, David A. Langworthy announced a proposed squeeze out merger in which the public shareholders would receive $6.50 a share and the family stockholders would receive all the stock of Magmetco. At the time of the merger Magnetic stock possessed a book value of $11.77 a share. The stock traded in the over-the-counter market for $2.50 to $5.50 a share. In connection with the proposed merger the management of Magnetic sent its shareholders a proxy statement soliciting a favorable vote, and included therein a letter from Butcher indicating that $6.50 was a fair cash price for the Magnetic shares. Most, or all, of the public shareholders surrendered their shares for the $6.50. In soliciting favorable stockholder action the defendants failed to disclose numerous material facts and made numerous material misrepresentations, the details of which need not be set forth. Through their omissions and misrepresentations they induced Roberts and other shareholders to believe that they had no practical alternative to accepting the $6.50 offered for their shares. Shortly after the merger's consummation the Langworthy interests sold their stock in Magmetco to another corporation for a price of over $15.00 per old Magnetic share.
 
 
 4
 These factual allegations state a claim that the defendants used manipulative or deceptive devices or practices in violation of section 10(b), and made untrue statements, or omitted material facts in connection with a proxy solicitation in violation of section 14(a). Because enforcement of the Securities Exchange Act is, by virtue of section 27, 15 U.S.C. § 78aa (1976), rendered a matter of exclusive federal jurisdiction, recovery on a cause of action implied from section 10(b) and 14(a) could not be had in a state court. But the same allegations of fact state a cause of action under state law for breach of fiduciary duty and for common law fraud. See Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 A.2d 24 (1963); Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 134 A.2d 761 (1957); Riverside Trust Co. v. Collin, 114 N.J.Eq. 157, 168 A. 377 (1933). Thus the very transactions giving rise to the section 10(b) and section 14(a) claims would be cognizable in New Jersey courts. And it is clear which statute of limitations a New Jersey court would apply to these claims: the six-year statute of limitations provided by N.J.S.A. 2A:14-1 governing actions for common law fraud. The statute on which the district court relied, N.J.S.A. 47:3-71(e), would not have been applied to Roberts' claims. Litigation over the transactions alleged would, in a New Jersey court, be alive, not in repose.
 
 
 5
 The district court, recognizing that in a New Jersey court the action would proceed, nevertheless chose to apply a provision in a statute which is wholly inapplicable to the transactions alleged in the complaint. The civil liability provision of the New Jersey Uniform Securities Act, section 49:3-71(a), provides:
 
 Any person who
 
 6
 (1) offers or sells a security in violation of sections 8(b), 9(a) or 13 of this Act, or
 
 
 7
 (2) offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission) Is liable to the person buying the security from him . . . . (emphasis added).
 
 
 8
 By its own terms the New Jersey Uniform Securities Act protects Buyers of securities. It provides no protection to sellers or tenderers of securities. It prohibits unlawful representations concerning registrations, N.J.S.A. § 49:3-55 (1970), persons from acting as broker-dealers, agents, or investment advisors unless duly registered, N.J.S.A. § 49:3-56 (1970), and the sale of unregistered securities. N.J.S.A. § 49:3-60 (1970). However, it has nothing to do with the fiduciary duties of officers, directors, or insiders, nor with frauds perpetrated by buyers or tenderees in a merger. Indeed, unlike section 10(b), section 49:3-71 does not contemplate the implication of additional remedies. See N.J.S.A. § 49:3-71(h) (1970). Consequently, it lacks even potential application to these transactions.
 
 
 9
 Nor does the New Jersey Uniform Securities Act preempt the field with respect to sellers' liability. In section 49:3-71(h) it provides:
 
 
 10
 The rights and remedies provided by this act are in addition to any rights or remedies that may exist at law or in equity . . ..
 
 
 11
 Thus New Jersey's common law remedies for breach of fiduciary duty and for fraud are undisturbed by the enactment, in 1967, of the New Jersey Uniform Securities Act. The savings clause negates any suggestion that the two-year time-bar of section 49:3-71(e) was intended to supplant time-bars otherwise applicable to pre-existing causes of action.
 
 
 12
 In justifying its departure from the statute of limitations which New Jersey would apply to litigation arising out of the facts alleged the district court reasoned:
 
 
 13
 The duty of this court is not to apply the limitations period of the state statute under which the plaintiff might obtain relief. Were this the controlling question, the six year fraud provision would necessarily apply. This court's analysis, as mentioned earlier, must instead focus on (1) the most similar or analogous statute which; (2) best effectuates the purpose of the federal legislation. 463 F.Supp. at 940.
 
 
 14
 Applying this test the court concluded that the cause of action provided by the New Jersey Uniform Securities Act, as opposed to that provided by New Jersey common law, was more nearly analogous to that recognized under sections 10(b) and 14(a) of the Securities Exchange Act. However, since the New Jersey Uniform Securities Act is wholly inapplicable to the transaction alleged in the complaint the analogy escapes us. Indeed, because the facts alleged in the complaint are actionable both under the 1934 Act and under New Jersey common law the closer analogy is the one rejected by the district court.
 
 
 15
 In the second part of its analysis, the determination of the state statute of limitations best effectuating the purposes of the Securities Exchange Act, the court pointed to the one-year statutes of limitations found in section 13 of the Securities Act of 1933, 15 U.S.C. § 77m (1976), and in sections 9(e), 18, and 29 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(e), 78r(c), 78cc(b) (1976), and to the two-year statute of limitations found in section 16 of the 1934 Act. 15 U.S.C. § 78p(b) (1976). From these the district court concluded that Congress generally favored relatively short limitations periods in civil securities suits. And from this perceived favoritism it divined a congressional intent to apply shorter state statutes of limitations to section 10(b) and 14(a) actions. 463 F.Supp. at 941.
 
 
 16
 The fact remains, however, that Congress chose No uniform federal statute of limitations to govern actions based upon sections 10(b) and 14(a). In this circumstance, as indicated Supra, the Supreme Court has announced the rule that we must look not for an analogous federal limitations period, but for an analogous forum state limitations period. Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). Much can be said, perhaps, for a different rule in a different context directing a federal court to statutes of limitations governing analogous federal causes of action. But the rule has been otherwise for many years, and an inferior federal court is not free to change it.
 
 
 17
 Moreover, this case is a particularly inappropriate one in which to make the change, because a federal policy of repose would not in any event prevail. As is so often the case with federal law, section 10(b) and section 14(a) are interstitial. The liabilities those sections impose coexist with state common law remedies. This lawsuit if brought in state court for common law fraud would not be time-barred. But because of the exclusive jurisdiction provision of section 27, the section 10(b) and section 14(a) causes of action can not be heard in state court. Thus, the effect of the district court's ruling was not to accommodate a state policy of repose, as required by governing Supreme Court decisions, but to deprive plaintiff of the only forum which possessed jurisdiction to consider all the legal bases for the relief sought.
 
 
 18
 The question here presented, whether the statute of limitations governing common law fraud should apply in section 10(b) and 14(a) actions has been considered by other courts. The common law fraud statute of limitations was held applicable in Stull v. Bayard, 561 F.2d 429, 431-32 (2d Cir. 1977), Cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); Arneil v. Ramsey, 550 F.2d 774, 780 (2d Cir. 1977); IDS Progressive Fund, Inc. v. First of Michigan Corp., 533 F.2d 340 (6th Cir. 1976); United California Bank v. Salik, 481 F.2d 1012 (9th Cir.), Cert. denied, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90, 103-04 (10th Cir.), Cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971); Charney v. Thomas, 372 F.2d 97, 99-100 (6th Cir. 1967); Fratt v. Robinson, 203 F.2d 627, 634-35 (9th Cir. 1953); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951); Jerome v. Ampre Corp. (1978 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 96,343 (D.N.J.1978); Klapmeir v. Peat Marwick, Mitchell & Co., 363 F.Supp. 1212, 1217-18 (D.Mich.1973); Connelly v. Balkwill, 174 F.Supp. 49, 63-64 (N.D.Ohio 1959), Aff'd per curiam, 279 F.2d 685 (6th Cir. 1960); Tobacco & Allied Stocks, Inc. v. Transamerica Corp., 143 F.Supp. 323, 327-28 (D.Del.1956), Aff'd, 244 F.2d 902 (3d Cir. 1957). See also Janigan v. Taylor, 344 F.2d 781, 783 (1st Cir. 1965), Cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). We find the reasoning of these cases persuasive.
 
 
 19
 In opposition the defendants invoke several cases in which federal courts have looked to the time-bar of the forum state's Uniform Securities Act. In some of these cases the plaintiff was a buyer to whom section 410 of the Uniform Securities Act provides a cause of action. Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123, 124-28 (7th Cir. 1972); Vanderboom v. Sexton, 422 F.2d 1233, 1236-41 (8th Cir.), Cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); See Newman v. Prior, 518 F.2d 97, 98-100 (4th Cir. 1975). Since the state law relied upon afforded the complainant a cause of action the adoption of the state policy of repose applicable to that cause of action was arguably correct. The defendants also rely on Hudak v. Economic Research Analysts, Inc., 499 F.2d 996, 999-1000 (5th Cir. 1974), Cert. denied, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975) and Schaefer v. First National Bank of Lincolnwood, 509 F.2d 1287, 1293-95 (7th Cir. 1975), Cert. denied, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). In these cases the court applied the state statute of limitations applicable to a state statutory cause of action, not the Uniform Securities Act, which largely paralleled section 10(b) and Rule 10b-5. There is no such New Jersey statute applicable to sellers. Finally, the defendants rely on cases in which the court rejected a short state statute of limitations applicable to common law fraud actions in favor of a longer state statute of limitations applicable to securities law suits on the theory that adoption of the longer of two arguably applicable state statutes best effectuated the policies of the federal securities law. Dupuy v. Dupuy, 551 F.2d 1005, 1023-24 n. 31 (5th Cir. 1977); Berry Petroleum Company v. Adams & Peck, 518 F.2d 402, 406-09 (2d Cir. 1975) (applying Texas law). Certainly, cases based upon that principle can offer no support for a decision choosing a shorter period from a statute entirely inapplicable to the underlying transactions.
 
 
 20
 One case cited by defendants does support the district court's result. In Fox v. Kane-Miller Corp., 542 F.2d 915 (4th Cir. 1976), the Court applied the two-year limitation period of section 410 of the Uniform Securities Act, to a section 10(b) action brought by a seller, rather than a buyer. We find Fox unpersuasive, if for no other reason than its failure even to make note of the fact that the statute relied upon did not provide a cause of action for anyone other than a buyer. Another case cited by defendants which arguably supports the district court's result is In re Alodex Corp. Securities Litigation, 533 F.2d 372 (8th Cir. 1976). There the court applied the two-year limitation period of section 410 of the Uniform Securities Act to a section 10(b) action growing out of a stock for stock merger. Alodex, however, does not discuss whether in such a merger the Iowa courts would find a statutory cause of action. Arguably they would, since the exchange of stock could be treated as both a purchase and a sale. In any case the Eighth Circuit, like the Fourth Circuit in Fox, betrays no awareness of the buyer-seller distinction. If that court intended to rely on a state statute which did not apply to the merger, we decline to follow it.
 
 
 21
 Judge Sloviter in her concurrence suggests that we are dealing not with identification of a state policy of repose, but with identifying the state statute of limitations which best comports with the federal substantive policy advanced by the federal cause of action. There is much to be said for that approach to the resolution of our problem. See Consolidated Express, Inc. v. New York Shipping Ass'n, 602 F.2d 494, 507 (3d Cir. 1979). Thus, the fact that I write separately should not be construed as disagreement with it. But whether one looks at the problem from the perspective of New Jersey law, or from that of federal law, what is perceived is application of the New Jersey six-year statute of limitations.
 
 
 22
 We hold that the governing statute of limitations for the federal claims pleaded in this case is that provided by N.J.S.A. 2A:14-1. The judgment appealed from will be reversed and the case will be remanded for further proceedings.
 
 
 23
 SLOVITER, Circuit Judge, concurring.
 
 
 24
 I concur in the decision that New Jersey's six-year statute of limitations applicable to actions for common law fraud governs the claim in this case. I reach that decision by a route which diverges in principle from that followed by Judge Gibbons because I am not persuaded that the selection must begin with the inquiry "whether (the) state court would entertain an action" or that the decision must be made on the basis of "accommodat(ing) a state policy of repose."
 
 
 25
 There has been an unfortunate dearth of legal commentary analyzing the basis upon which a federal court considering a federal statutory claim should determine the selection of a state statute of limitations from several which may be applicable. Since the issue may implicate more than the particular statute at issue here, it may be worthwhile to begin such an inquiry with the hope that others will be stimulated into shedding more light on the issue.
 
 
 26
 At the outset, it is necessary to rationalize why a state statute of limitations should ever be applied to a federal statutory claim, particularly when the federal claim involved is one that must be brought exclusively in federal court. The seeming incongruity of such a course is that it leads to a lack of uniformity as to an important aspect of enforcement which stands in sharp contrast to the uniformity in substantive law which probably was one of the bases for enactment of the federal statute. Nonetheless, the instructions we have received from the Supreme Court are unambiguous: in the absence of a federal limitations period, resort must be had to the applicable state statute of limitations. Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Campbell v. Haverhill, 155 U.S. 610, 619-20, 15 S.Ct. 217, 39 L.Ed. 280 (1895); McCluny v. Silliman, 28 U.S. (3 Pet.) 270, 277, 7 L.Ed. 676 (1830).
 
 
 27
 There is a strong likelihood that the recourse to state statutes of limitations has resulted from historical habit. In diversity cases, the federal courts uniformly followed state statutes of limitations. One might posit that the original basis for federal deferral to state statute of limitations was the Process Acts where Congress directed that in trials at common law the federal courts should follow the "forms of writs and executions . . . and modes of process" of the forum state. See, e. g., Act of Sept. 29, 1789, c. 21, § 2, 1 Stat. 93. However, local statutes of limitations were not easily classifiable as "forms of writs and executions . . . and modes of process", and it appears that it was the Rules of Decision Act, which was applied not only in substantive matters but in procedural matters as well, to which the courts turned in applying state statutes of limitations. See Hill, State Procedural Law in Federal Nondiversity Litigation, 69 Harv.L.Rev. 66, 77 (1955). As the Court noted in Bauserman v. Blunt, 147 U.S. 647, 652, 13 S.Ct. 466, 468-469, 37 L.Ed. 316 (1893):
 
 
 28
 By a provision inserted in the first Judiciary Act of the United States, and continued in force ever since, Congress has enacted that "the laws of the several states, except where the Constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply." Act (of) September 24, 1789, c. 20, § 34 (1 Stat. 92; Rev.Stat. § 721). No laws of the several States have been more steadfastly or more often recognized by this court, from the beginning, as rules of decision in the courts of the United States, than statutes of limitations of actions, real and personal, as enacted by the legislature of a State, and as construed by its highest court.
 
 
 29
 And of course, in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court, while declining to characterize a statute of limitations as procedural or substantive, held that the state statute must be applied in a suit in equity by a federal court sitting in diversity.
 
 
 30
 Although the series of cases in which application of aspects of state statute of limitations in federal courts reached its most notable crescendo were all cases in which the federal courts were sitting in diversity, Guaranty Trust Co. v. York, supra; Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), it has been observed that the procedural applications of the Rules of Decision Act, at least before Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), seem to have been made without regard to the source of federal jurisdiction. Hill, Supra at 87-88.
 
 
 31
 It is important to note that even while federal courts paid deference to state statute of limitations, it was clear that there were circumstances under which they would not be applied. Thus, in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), traditional principles of equity were held to supercede the forum's statute of limitations. In Campbell v. Haverhill, supra, the Court cautioned against mechanical application of the local statutes, particularly when they might discriminate against federally created causes of action or be applied "in manifest hostility to Federal rights or jurisdiction . . . ." 155 U.S. at 615, 15 S.Ct. at 219. In Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953), it was federal practice permitting an amendment to relate back rather than the state practice which was held applicable in an admiralty proceeding.
 
 
 32
 The ascendancy of federal procedure as a result of the promulgation of the Federal Rules of Civil Procedure and the primacy given to federal policies even where no Federal Rule applies, Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), make it appropriate to reexamine the automatic application of state statutes of limitations to federally created claims. Habit and custom are not in themselves satisfactory bases for slavish adherence to a former practice if there is no other basis for support. Cf. Atkins v. Schmutz Manufacturing Co., 435 F.2d 527 (4th Cir. 1970), Cert. denied, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971) (federal tolling rule applied in diversity action), discussed in 71 Colum.L.Rev. 865 (1971); But cf. Walker v. Armco Steel Corp., 592 F.2d 1133 (10th Cir. 1979), Cert. granted, --- U.S. ----, 100 S.Ct. 43, 62 L.Ed.2d 29, (1979) (state's rule on tolling not displaced by Fed.R.Civ.P. 3).
 
 
 33
 There may well be, however, another more persuasive reason why resort to state statutes of limitation is appropriate in federal claims. That is simply that they offer an available and discernible resource to which to turn in the absence of any other; or, like the mythical mountain, "because they are there." Where no limitation is included "both state and federal courts have applied the state law of limitations, in the belief that Congress would not have intended the anomaly of a class of perpetual rights." Developments in the Law Statutes of Limitations, 63 Harv.L.Rev. 1177, 1266 (1950).
 
 
 34
 If the federal courts did not "adopt" or "borrow" the state statute of limitations, one is tempted to question how the number of years would be selected if it were conceded, as is reasonable, that perpetual rights were not intended? Ever since the Limitation Act of 1623 which marked the beginning of the modern law of limitations on personal actions in the common law, see Developments, id. at 1178, legislatures have grappled with conflicting policies and considerations in fixing the various limitations periods for different types of actions. It is a task uniquely suited to a legislative body which, although it may sometimes make an arbitrary decision, is ultimately answerable to its constituency. The nature of statutes of limitations was discussed in Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) where the Court said:
 
 
 35
 (Statutes of limitations) are by definition arbitrary . . . They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.
 
 
 36
 The practice of the equity courts, which were not bound by any statute, to measure laches by the comparable statute of limitations also supports the view that ordinarily selection of limitations periods is essentially a legislative function. See discussion of equitable practice in Russell v. Todd, 309 U.S. 280, 287-291, 60 S.Ct. 527, 84 L.Ed. 754 (1940).
 
 
 37
 Professor Mishkin, in his provocative article, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797 (1957), has written: "(T)here may be situations where state law is chosen only because of special difficulty in the judicial framing of a definite federal rule on a specific issue in an area otherwise totally national." Id. at 803-04. The example he cites is "in establishing a limitations period for federal causes of action as to which Congress has provided no guidance." Id. at 804, n. 27.
 
 
 38
 The Court itself gave support to this rationale for resorting to state law in UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), when, in holding that state statutes of limitations should be used under § 301 of the Taft-Hartley Act, it rejected the claim that it "devise a uniform time limitation to close the statutory gap left by Congress" with the comment that "the teaching of our cases does not require so bald a form of judicial innovation." Id. at 701, 86 S.Ct. at 1111. It further stated:
 
 
 39
 Thus, although a uniform limitations provision for § 301 suits might well constitute a desirable statutory addition, there is no justification For the drastic sort of judicial legislation that is urged upon us. (emphasis added). Id. at 702-703, 86 S.Ct. at 1111-1112.
 
 
 40
 The above appears to demonstrate that the resort by federal courts in federal claim cases to state statutes of limitations has been motivated primarily because it is expedient and not because policy considerations compel deference to the state. In the absence of countervailing considerations, the state statute can be applied. Its utilization and application must conform with the federal policy reflected in the substantive right being enforced as well as substantial federal policies which inhere in the operation of an independent federal judicial system.
 
 
 41
 It follows that once the federal court determines that there is more than one state statute of limitations which it can borrow, the selection of the one most appropriate to use must be made by considerations which comport with federal policy. The state policy of repose is relevant only if, and to the extent to which, it is consistent with the underlying federal claim. As the Court observed in UAW v. Hoosier Cardinal Corp., supra: "(T)he characterization of (the Indiana statute) for the purpose of selecting the appropriate state limitations provision is ultimately a question of federal law . . . But there is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national labor policy." Id. at 706, 86 S.Ct. at 1113. It is important to recognize, therefore, that it is Federal law and Federal policy which is paramount, and if the federal policy leads to the state law, it is done as an application of a federal choice of law. See Consolidated Express, Inc. v. New York Shipping Ass'n, 602 F.2d 494, 507 (3d Cir. 1979) (Gibbons, J.) ("(I)n a § 303(b) case the specific state statute of limitations that is adopted, and the manner of its adoption, are to be determined by the policies that underlie the federal regulatory statute.")
 
 
 42
 It may be convenient to overlook the irony of attempting to ascertain Congressional intent as to choice of statute of limitations in a claim based on sections of the Securities Exchange Act (§§ 10(b) and 14(a)) which do not themselves expressly provide a right of action. We are nevertheless guided by definitive determinations that under both sections the implication of a private right of action is necessary to effectuate the Congressional purpose. See Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).
 
 
 43
 Looking to that Congressional intent in connection with the matter at issue, the salient feature is that Congress, in enacting the federal securities statutes, intended that they be applied in addition to, and not in place of, applicable state statutes. Section 28 of the Securities and Exchange Act explicitly provides that federal securities law should not be interpreted as wholesale displacement of state securities regulation:
 
 
 44
 The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of. Nothing in this chapter shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder.
 
 
 45
 15 U.S.C. § 78bb.
 
 
 46
 The Supreme Court has recently commented on this intention in Leroy v. Great Western United Corp., --- U.S. ----, 99 S.Ct. 2710, 2716 n. 13, 61 L.Ed.2d 464 (1979), where it stated:
 
 
 47
 Thomas Corcoran, a principal draftsman of the 1934 Act, indicated to Congress that the purpose of § 28 was to leave the States with as much leeway to regulate securities transactions as the Supremacy Clause would allow them in the absence of such a provision. Senate Committee on Banking and Currency, Stock Exchange Practices: Hearings on S.Res. 84 (72d Cong.) and S.Res. 56 and S.Res. 97 (73d Cong.), p. 15, National Securities Exchange Act of 1934, 73d Cong., 1st Sess., 6577 (1934). In particular, the provision was designed to save state blue sky laws from pre-emption. . . .
 
 
 48
 Since Congress has recognized the value of the concurrent operation of the federal statute and nonconflicting state securities actions, it would in ordinary circumstances lead us to the application of the statute of limitations provisions in the state securities act, i. e. the two-year limitation period in the New Jersey blue sky law. That would seemingly supply the provision most consonant with and complementary to that of the federal scheme.
 
 
 49
 However, that conclusion does not necessarily follow in this case which is a suit brought by a seller claiming damages as a result of violation of the federal act. As Judge Gibbons has pointed out, the New Jersey securities statute provides no protection to sellers or tenderers of securities. If this had resulted from a conscious state policy to exclude buyers from recovering on such claims, then the line of reasoning developed here might impel the federal court to acknowledge that state policy when choosing a governing statute of limitations. It is evident, however, that the exclusion of the sellers from the provisions giving a right of action under the New Jersey statute was not made to deny sellers any relief.
 
 
 50
 The civil liability provision in the New Jersey statute tracks that of the Uniform Securities Act upon which it is based.[1] The history surrounding the drafting of the Uniform Securities Act establishes that the failure to provide for liability against buyers was made with the intent of continuing in force all of the common law remedies against fraudulent buyers. Thus, the Draftsmen's Commentary to Section 410(a) of the Uniform Securities Act (the section imposing civil liability) states:
 
 
 51
 Concerning fraudulent Buyers, see the last paragraph of the draftsmen's commentary under Section 101.
 
 
 52
 L. Loss, Commentary on the Uniform Securities Act 147 (1976).
 
 
 53
 The commentary to which the draftsmen refer appears following Section 101 of the Uniform Securities Act:
 
 
 54
 At the same time, there is no clear need to create any Civil liability against buyers as distinct from sellers. Although the lower federal courts have uniformly implied a civil cause of action against fraudulent buyers under the SEC rule, the federal courts when applying federal law do not have at their disposal all of the common-law and equitable remedies of deceit and rescission which are available to the state courts without benefit of statute. In the area of civil liability, moreover, it seems not only unnecessary but unwise to disturb the general jurisprudence which has been developing with reference, for example, to the obligation of corporate insiders to make affirmative disclosure when purchasing from existing stockholders. On the other hand, the general law is not adequate to deal with flagrant cases of fraud by buyers on a Criminal level, and there can, of course, be no public action for an injunction against such practices without specific statutory authority.
 
 
 55
 L. Loss, Id. at 8.
 
 
 56
 Thus, the Uniform Securities Act which provides civil liability on behalf of buyers against fraudulent sellers intended to supplement the body of common law permitting sellers to sue fraudulent buyers. For such actions, New Jersey provides the six-year statute of limitations referred to in Judge Gibbons' opinion. Therefore it follows that the six-year statute of limitations provision should also be applicable in an action brought by a seller claiming damages for alleged fraudulent practices of a buyer in violation of sections 10(b) and 14(a) of the Securities Exchange Act.
 
 
 57
 To recapitulate, I have reached this conclusion by applying a federal policy in the securities field to operate concurrently with state remedies for similar violations; the state remedies provide statutory relief for buyers and common law relief for sellers. There is no occasion here to consider the appropriate statute of limitations to be applied were this a suit by a buyer.
 
 
 58
 SEITZ, Chief Judge, dissenting.
 
 
 59
 I agree with the concurring opinion that the duty of a court faced with choosing a state statute of limitations for a federal cause of action is to effectuate federal policy. I disagree with the theory of the majority that New Jersey's relegation of sellers to the common law, no matter how it is characterized, provides the answer in this case. When trying to determine a statute of limitations for federal claims, the court should look to the state statute that addresses the same regulatory area. If the state, as part of that regulatory scheme, enacts a statute of limitations, then that statute should govern federal claims, not a general, catch-all statute of limitations.
 
 
 60
 As an initial matter, it is important to note that this is an area of the law where precedent provides scant comfort no matter what the outcome. The Supreme Court has yet to rule on the issue. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Although this circuit has never ruled on the issue, other circuits have split generally over whether to apply the blue sky limitation period or the one for common-law fraud. Moreover, even those courts that favor the blue sky rule have split over the significance of the purchaser-only remedy where a seller brings suit. Compare Dupuy v. Dupuy, 551 F.2d 1005, 1023-24 n.31 (5th Cir.) (makes no difference), Cert. denied, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977), With Toledo Trust Co. v. Nye, 392 F.Supp. 484, 490-91 (N.D. Ohio 1975) (makes a difference), Rev'd on other grounds, 588 F.2d 202 (6th Cir. 1978). Finally, the confusion is compounded by the fact that some cases picking the common-law period were decided at a time when the relevant state had no blue sky law. See generally Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123, 127-28 (7th Cir. 1972); Vanderboom v. Sexton, 422 F.2d 1233, 1236-41 (8th Cir.), Cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). Where such a situation exists, a court must relate the problem at hand to more general principles rather than trying to parse out a rule from the case law.
 
 
 61
 In a federal cause where a federal court looks to state statutes of limitations, there should be a two-step inquiry. First, the court should determine which state substantive remedy is the most analogous to the federal statute in question. Second, the court should ask whether the statute of limitations applicable to that remedy best effectuates federal policy.
 
 
 62
 Turning to the first question, initially one must determine what is meant by "most analogous." Some courts have adopted the approach of comparing the elements of the rule 10b-5 cause of action to the state cause of action in question. Here, the state blue sky statute is different from rule 10b-5 in three aspects: it does not provide a remedy for sellers, it does not cover the use of manipulative or deceptive devices, and it provides for more restrictive damages. Thus by merely matching up the elements of the state and federal causes of action, one might conclude that the blue sky limitation period should not apply. But see Morris v. Stifel, Nicolaus & Co., 600 F.2d 139, 144-46 (8th Cir. 1979) (although similarity of defenses usually is important, absence of scienter requirement in blue sky law does not require rejection of blue sky limitation period).
 
 
 63
 Although comparison of the elements of the state and federal claims is helpful, it should not be decisive. If the federal claim requires x, y, and z, and state claim A requires x and y but claim B requires y and z, that does not bring the court any closer to a more certain result, or one that is more likely to comport with federal interests. Nor does it help to say that the state legislature placed claim A within a statutory scheme but left claim B as it was at common law. A surer guide to proper analogy of state and federal substantive law in this context is the relationship of the state statute of limitations to the underlying substantive claim. Every statute of limitations cuts off claims that relate to specific types of conduct; one cannot consider the substantive claim without examining its relation both to the relevant statute of limitations and to the problem it seeks to correct. The question is whether the state statute of limitations addresses itself to the same kind of conduct (and the problems that such conduct creates) that is covered by the federal claim. See id. at 142-44. Cf. Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (expressing concern that state legislatures often do not address "national interests" in devising their limitation periods). In this case, one must look to the history and nature of the two statutes to determine what the state legislature considered in enacting them.
 
 
 64
 The six-year statute of limitations has its origins in the revolutionary period. See generally Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 207 A.2d 513 (1965). At common law, there was no limitation period for non-statutory claims.[1] In 1799, New Jersey adopted a provision covering certain actions, modeling it on a statute from the reign of James I. The law was expanded and revised several times until its passage in substantially the present form in 1877. In the course of the many revisions, it gradually became a catch-all provision covering a wide variety of conduct.
 
 
 65
 By contrast, the two-year period in New Jersey's blue sky statute was adopted in the 1960's as part of a statutory scheme with a specific goal in mind: regulation of misinformation in the sale of securities. Modeled on the Uniform Securities Act, the act, of which the limitation period is an integral part, is the result of careful thought and study of a specific problem both by the legislature and by the drafters of the Uniform Act. Moreover, the entire act largely draws on existing federal securities statutes. See Commissioner's Note to Uniform Securities Act § 410 in 7A Uniform Laws Annotated (1978).
 
 
 66
 In my view, the fact that New Jersey relegates sellers to the common law or limits statutory plaintiffs to recovery for fraud is outweighed here by the thrust of the New Jersey blue sky law. Where a state statute of limitations is part of a regulatory scheme that is addressed to misinformation in the sale of securities and uses similar federal statutes as its model, then the claims covered by that statute of limitations are more analogous to rule 10b-5 than are those falling under a catch-all provision that has slowly evolved to cover a wide variety of disparate conduct. To give decisive weight to the presence or absence of particular elements of a cause of action misperceives the function of analogy in this context, which is to find proximity not congruity.
 
 
 67
 The next inquiry is whether the blue sky limitation period best effectuates federal policy. It is important to note at the outset that the question is not whether a plaintiff will have two or six years after the illegal conduct occurs to bring his suit. If that were the case, a six-year rule might be desirable because in many cases fraud is difficult to discover for a period of time. But such is not the case because tolling principles apply to the question of when the statute of limitations begins to run. I need not decide whether state or federal law controls the outcome of the tolling question. Compare Holmberg v. Albrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), And Arneil v. Ramsey, 550 F.2d 774, 780 (2d Cir. 1977), With Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462-66, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). New Jersey applies the rule (which is the same as the federal rule) to the six-year statute that where the cause of action involves fraud that by its nature is concealed, the statute of limitations does not begin to run until a reasonable man would discover the fraud. E. g., Hyland v. Kirkman, 157 N.J.Super. 565, 385 A.2d 284, 292 (1978). Although no case addressing the point has arisen under the two-year statute, there is no reason to suppose that the state would not apply the same rule there. In effect, the same tolling principles, whether state or federal, apply no matter which of the two statutes is chosen. Thus the policy question is how long a plaintiff should have to file suit once he knows or should know of the wrongful conduct.
 
 
 68
 After the plaintiff has notice, there is a strong federal interest in requiring him to file suit quickly. First, an early action will alert other shareholders to possible misconduct in the affairs of the corporation. Second, the shorter period permits the company's management to treat a given securities transaction as closed, allowing them to proceed more confidently with running the company. Finally, by quickly bringing matters to a head, the blue sky rule will tend to promote greater stability in the market, a major goal of federal securities regulation. See generally Developments in the Law Statutes of Limitation, 63 Harv.L.Rev. 1177, 1185-86 (1950). All of these policies are undercut by a rule that permits the plaintiff who has knowledge to wait six years, all the while watching the fate of the corporate enterprise and the concomitant rise and fall in the price of the stock.
 
 
 69
 My view of federal policy is buttressed by the fact that every explicit statute of limitations in the federal securities acts is of relatively short duration. E. g., 15 U.S.C. §§ 78i(e), 78p(b), 78r(c), 78cc(b) (1976). Cf. ALI Fed. Securities Code § 1421 (Tent. Draft No. 2, 1973). I rely on these statutes only as some indicia of federal policy. Several commentators have argued that federal courts should look to the most analogous federal statute for a rule 10b-5 limitation period. E. g., 6 L. Loss, Securities Regulation 3898-900 (1969). Were I writing on a clean slate, I would be inclined to adopt that approach. The Supreme Court, however, has rarely deviated from the normal rule of looking to state statutes. See Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).
 
 
 70
 Thus because the New Jersey blue sky law is the most analogous statute and because its relevant statute of limitations best effectuates federal policy, I would affirm that portion of the district court's holding. The plaintiff argues that if the two-year statute applies then the district court improperly decided the tolling question. The proxy statement stated that Langworthy intended to run Magmetco, and the plaintiff claims that at the time of the proxy vote the defendants fraudulently concealed their plan to sell the company to Inductotherm.
 
 
 71
 The district court denied the plaintiff the opportunity to conduct discovery on the question of the defendants' state of mind at the time of the proxy statements vis-a-vis a subsequent sale of the business. The district court granted summary judgment to the defendants on the ground that the plaintiff's presence at the stockholders meeting provided him with sufficient notice to start the statute of limitations running.[2] The record reveals, however, that the discussion at that meeting centered on the adequacy of the price being offered; there apparently was no discussion of future plans regarding a sale to Inductotherm. The same is true of letters written after the meeting, upon which the district court also relied. If the defendants did have the sale in mind at the time and concealed that from the plaintiff, then he may not have had notice of the fraud until the Inductotherm sale took place. Because the amended complaint raises this issue and because the district court denied discovery thereon, I would reverse the grant of summary judgment and remand for further proceedings on the tolling issue.
 
 
 72
 I would hold that the blue sky statute is the most analogous state statute that best effectuates federal policy and would affirm the district court on this point. I would reverse the grant of summary judgment and remand for further proceedings on the issue of tolling.
 
 
 
 [1]
 The district court opinion is reported at 463 F.Supp. 934 (D.N.J.1978)
 
 
 [1]
 Compare N.J.S.A. Section 49:3-71(a) in the text of Judge Gibbons' opinion with the following:
 Section 410. (Civil Liabilities.)
 (Violation of Registration or Fraud Provisions.)
 (a) Any person who
 (1) offers or sells a security in violation of section 201(a), 301, or 405(b), or of any rule or order under section 403 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under section 304(d), 305(g), or 305(h), or
 (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission,
 is liable to the person buying the security from him . . . Uniform Securities Act, Section 410(a).
 
 
 [1]
 New Jersey does not apply its six-year statute to statutory causes of action. See State v. Atlantic City Electric Co., 23 N.J. 259, 128 A.2d 861 (1957). Other courts have disagreed on the significance of such a rule in the context of limitation periods for rule 10b-5 cases. See 3 L. Loss, Securities Regulation 1774 & n.311 (1961)
 
 
 [2]
 Because of this disposition of the case, the district court did not rule on the plaintiff's motion for certification of the case as a class action. Thus no question is presented of the effect of class action status on the tolling question