882 F.2d 840
 Blue Sky L. Rep. P 73,011, 58 USLW 2164,
Fed. Sec. L. Rep. P 94,558
 Michael GATTO, Richard Gatto, Stanford J. Heller, Laurence
Kramer, Ralph Nappi, Nat Sorkin, Sam Zuckerman, Sandy
Zuckerman, Hyman Silkes, Leff & Wolf Co., a New York
unincorporated association, and O. George Philipp, Appellants,
v.
MERIDIAN MEDICAL ASSOCIATES, INC., 1680 Meridian Corp., Mast
Property Investors, Inc. Consolidated Mast Corporation, Mast
Property Investors, Inc. and Affiliated Companies Employee
Profit Sharing Trust, NWN Capital Ltd., Marks, Shron &
Company, Norman W. Nick, Marvin E. Greenfield, Gerald
Silverman, John Doe and Richard Roe Inc.
 No. 89-5206.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Aug. 10, 1989.
 Decided Aug. 24, 1989.
 
 Robert H. Jaffe, Jaffe & Schlesinger, P.A., Springfield, N.J., for appellants.
 Lawrence N. Lavigne, Hanlon, Herzfeld & Rubin, Edison, N.J., for appellees (Mast Property Investors, Inc., Consol. Mast Corp., Mast Corp., Mast Property Investors, Inc., Affiliated Companies Employee Profit Sharing Trust, NWN Capital Ltd., Norman W. Nick & Marvin E. Greenfield & Meridian Medical Associates, Inc.).
 Padraic B. Deighan, Marlton, N.J., and Clifford B. Hark, Miami, Fla., co-counsel for appellees Gerald Silverman and 1680 Meridian Corp.
 David B. Hamm, Herbert Rubin, Herzfeld & Rubin, P.C., New York City, for appellees (Mast Property Investors, Inc., Consolidated Mast Corp., Mast Corp., Mast Property Investors, Inc., Affiliated Companies Employee Profit Sharing Trust, NWN Capital, Ltd., Norman W. Nick and Marvin E. Greenfield).
 James M. Kaplan, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for appellees, Marks Shron & Co.
 Before SLOVITER and GREENBERG, Circuit Judges, and VAN ANTWERPEN, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 Appellants are plaintiffs in a suit alleging violations of federal securities laws and state common law in connection with their purchase on or about December 30, 1981 of limited partnership interests in a medical building, a transaction structured to shelter income from federal taxation. Appellees were various parties connected with the sale of the limited partnership interests. Meridian Medical Associates, Inc. (MMA) was the issuer of the securities; 1680 Meridian Corp. was a corporation organized to obtain a lease on the office building; Consolidated Mast Corporation was the sole shareholder of MMA; Mast Property Investors, Inc. and Affiliated Companies Employee Profit Sharing Trust provided financing; NWN Capital Ltd. was the broker-dealer which sold the securities; and Marks, Shron & Co. was an accounting partnership which prepared financial projections used in the offering. The individual defendants were principal shareholders and/or control persons of the various corporate defendants.
 
 
 2
 Appellants filed suit in federal court on December 28, 1987 after learning that the Internal Revenue Service had disallowed the tax deductions which formed the raison d'etre of their investments. Appellants' federal claim was based on allegations that they were induced to purchase the limited partnership interests by fraudulent misrepresentations and omissions constituting violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), (1982), and Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 (1988). Appellants contended that these violations gave them a right under section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78cc(b) (1982), to rescind the limited partnership agreements. Appellants also included various state law claims.
 
 
 3
 The district court granted defendants' motions to dismiss on the ground that the federal cause of action was barred by the statute of limitations. The court, applying the rule announced by this court in In re Data Access Sys. Sec. Litig., 843 F.2d 1537 (3d Cir.) (in banc ), cert. denied, --- U.S. ----, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), held that the appellants were required to file suit within one year from the time of discovery and within three years from the time the violation occurred. The district court also found that the Data Access rule applied retroactively and dismissed the amended complaint, including the pendent state law claims.
 
 II.
 
 4
 Appellants contend that the district court erred in applying the limitations period for section 10(b) and Rule 10b-5 violations to their claim under section 29(b), and, alternatively, that if Data Access does apply to claims under section 29(b) it should not apply retroactively in this case.
 
 
 5
 Section 29(b) provides in pertinent part that:
 
 
 6
 Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract ... heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract.
 
 
 7
 15 U.S.C. Sec. 78cc(b) (1982) (emphasis added).
 
 
 8
 Appellants claim that the applicable limitations period for claims under section 29(b), other than claims against brokers or dealers under section 15(c)(1) of the Securities Exchange Act, 15 U.S.C. Sec. 78o (c)(1), is the statute of limitations governing the rescission of contracts in the state in which the contract was made. They contend that the six year New York state limitations period for contract actions applies because rescission is a traditional contract remedy, and that therefore their complaint was timely.[1]
 
 
 9
 There appears to be no precedent covering precisely the issue before us.[2] It is evident, however, that appellants' federal claim is not based on any contract violations but on allegations of fraudulent inducement. Thus the argument that state contract limitations periods apply to suits seeking relief under section 29(b) is unpersuasive.
 
 
 10
 Instead we must determine under federal law the applicable statute of limitations for a suit seeking a section 29(b) remedy. We note that Section 29(b) does itself contain a statute of limitations governing certain limited situations. Suits against brokers or dealers based on violations of section 15(c)(1) must be brought "within one year after the discovery that such sale or purchase involves such violation and within three years after such violation." 15 U.S.C. Sec. 78cc(b). This provision is inapplicable here because the appellants' suit is not seeking rescission of a transaction for violation of section 15(c)(1) of the statute which prohibits use of manipulative, deceptive, or fraudulent devices by brokers or dealers.
 
 
 11
 Our holding in Data Access counsels that judicially identified limitations periods for federal securities law violations are to be selected by reference to analogous areas of federal securities law. See Data Access, 843 F.2d at 1545-49. We relied on three Supreme Court cases opting for a uniform limitation period under other statutes, see Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (civil RICO); DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (suits for violation of collective bargaining agreement, 29 U.S.C. Sec. 185); cf. Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (applying uniform state statute for civil rights suits under 42 U.S.C. Sec. 1983), to support application of a uniform federal statute of limitations in cases involving securities claims. Then, in selecting the appropriate statute of limitations we noted that Congress used a clear pattern within the provisions of the Securities Exchange Act to require suit to be brought within one year of discovery and within three years after the occurrence of the violation. 843 F.2d at 1545-46.[3] Thus, even if we were to conclude that the limitations period for the underlying section 10(b) and Rule 10b-5 violations does not govern a suit under section 29(b), we would adopt the one year/three year limitations period as matter of federal law for the same reasons outlined in Data Access.
 
 III.
 
 12
 Appellants argue next that even if Data Access applies, it should not apply retroactively.[4] When we directly confronted that issue in Hill v. Equitable Trust Co., 851 F.2d 691 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989), we upheld retrospective application of the Data Access rule. Of course, it does not follow that this is necessarily the result in all cases. Instead we must apply the three criteria set forth by the Supreme Court in Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), which govern when a decision will apply prospectively only. Those criteria are:
 
 
 13
 (1) The holding must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
 
 
 14
 (2) The merits and demerits in each case must be weighed by looking to the history of the rule in dispute, its purpose and effect, and whether retrospective operation will further or retard the rule's operation;
 
 
 15
 (3) Retrospective application must create the risk of producing substantially inequitable results.
 
 
 16
 Hill, 851 F.2d at 696.
 
 
 17
 As to the first criterion, appellants claim that Data Access overruled clear past precedent. They argue that this court's prior decisions in Biggans v. Bache Halsey Stuart Shields, Inc., 638 F.2d 605 (3d Cir.1980), and Roberts v. Magnetic Metals Co., 611 F.2d 450 (3d Cir.1979), clearly established that the applicable limitations period for Rule 10b-5 actions was to be determined by looking to the state securities laws and, if the state's blue sky law did not provide a civil remedy and a statute of limitations, to the state statute of limitations for common law fraud. The Hill court, however, found that those opinions written by sharply divided panels did not establish clear precedent, and that Data Access did not resolve an issue of first impression. Hill, 851 F.2d at 697-98. Appellants have pointed to no circumstances (i.e., any other circuit precedent regarding limitations for 10b-5 violations under New Jersey law) which would justify our deviation from the Hill court's legal conclusion on this issue.
 
 
 18
 Even more important here is the fact that the first Chevron factor looks to justifiable reliance. See Smith v. City of Pittsburgh, 764 F.2d 188, 195 (3d Cir.), cert. denied, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). Because appellants did not know the significant operative facts underlying their cause of action, particularly that the IRS would disallow the deductions, until after the three year absolute bar period of Data Access had passed, they could not possibly have relied on a longer statute of limitations period. Thus the first of the Chevron criteria is not met here.
 
 
 19
 As to the second criterion, appellants argue that retrospective application of Data Access will deprive them of a remedy. This argument is really an argument that retrospective application is inequitable and is properly considered in connection with the third criterion. Although there is an interest in uniformity which always militates in favor of retrospective application, there has been nothing presented by either appellants or appellees to undermine the Hill court's conclusion that "resolution of the second Chevron criteria ... is neutral." Hill, 851 F.2d at 698.
 
 
 20
 Resolution of the third criterion, however, cannot be answered solely by reference to Hill. In Hill, the court found that it was not inequitable to apply Data Access retroactively because the plaintiffs' suit would have been barred under the applicable state statute of limitations. Id. Appellants argue that under the applicable New York statute of limitations, their action would have been timely.
 
 
 21
 Contrary to appellants' assertions, however, under the precedent applicable at the time this suit was filed, the district court was obligated to look to the law of the forum state in order to determine the most analogous limitations period, see Roberts v. Magnetic Metals Co., 611 F.2d 450, 452 (3d Cir.1979), and a fair reading of our precedent would suggest that appellants should have been on notice that the New Jersey blue sky law with its two year limitations period for suits by buyers against sellers of securities might have been applicable. See id. at 453; Data Access, 843 F.2d at 1554 (Seitz, J., dissenting). Appellants point to no precedent which would have justified their belief that a contract period of limitations was relevant. In any event, as we noted in Fitzgerald v. Larson, 769 F.2d 160, 164 (3d Cir.1985), the third Chevron factor in practice overlaps with that of the first factor, "in that it would be inequitable to give retrospective application to a shortening of the limitations period that altered established law upon which plaintiff could have reasonably relied." Since, as we noted above, plaintiffs could not have reasonably relied on any applicable precedent, the type of equity that is relevant for the retrospective application issue is not present in this case. We hold, therefore, that the Chevron factors do not preclude retrospective application of the Data Access rule.
 
 IV.
 
 22
 In sum, we have held that when plaintiffs sue under section 29(b) of the Securities Exchange Act for rescission of a transaction alleging that the transaction violated section 10(b) or Rule 10b-5, they must do so within one year of their discovery of the facts underlying their claim and, in any event, no longer than three years from the transaction itself. We have further held that in this case there is no bar to the usual rule applying a legal decision retrospectively. For the foregoing reasons the judgment of the district court will be affirmed.
 
 
 
 *
 Hon. Franklin S. Van Antwerpen, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Appellants would apply New York law because the security agreements executed in connection with their assignment of the limited partnership interests provided that they were to be governed and construed in accordance with New York contract law. The district court held that these agreements were not at issue in the law suit and, furthermore, that such a provision, even if applicable, would merely govern the choice of substantive law to be applied to the security agreement and would not govern the choice of the statute of limitations. See Federal Deposit Ins. Corp. v. Petersen, 770 F.2d 141, 142-43 (10th Cir.1985); Des Brisay v. Goldfield Corp., 637 F.2d 680, 682 (9th Cir.1981). In light of our decision that we must look to federal law, we need not reach this issue
 
 
 [2]
 A district court in dictum has suggested that in actions under section 29(b) we must look to whether a claim on the underlying violation would be barred. See Gilbert v. Meyer, 362 F.Supp. 168, 176-77 (S.D.N.Y.1973)
 
 
 [3]
 We noted that most of the express causes of action under the 1934 Act have this statute of limitations, with the exception of section 16(b), 15 U.S.C. Sec. 78p(b), which has a two year absolute limitation. Data Access, 843 F.2d at 1545-46
 
 
 [4]
 Often overlooked is the fact that the majority in Data Access in effect applied the result retroactively, which is evident because it was disagreement with that silent portion of the holding which prompted the dissent. See 843 F.2d at 1551, 1553 (Seitz, J., dissenting)