David **STEINBERG**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**SHEARSON HAYDEN STONE, INC.,** and **Shearson Loeb Rhoades, Inc.,** Defendants.

**Civ. A. No. 81–390 CMW.**

United States District Court, D. Delaware.

Nov. 29, 1984.

Thomas G. Hughes, and Frank O'Donnell, of O'Donnell & Hughes, Wilmington, Del. (Richard D. Greenfield, and Robert P. Frutkin, of Greenfield, Chimicles & Lewis, Haverford, Pa., of counsel), for plaintiff, David Steinberg and for intervenor plaintiff, Frank Williams.

Charles F. Richards, Jr. and Stephen E. Herrmann, of Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This case arises out of allegations that Shearson Hayden Stone, Inc., and its successor in interest Shearson Loeb Rhoades, Inc. (hereinafter collectively "Shearson"), violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Steinberg's complaint alleges that Shearson failed to disclose material facts concerning credit terms applicable to its customers' margin accounts, with the purpose and effect of inducing Steinberg to purchase various securities on margin from Shearson, and that Steinberg suffered damages thereby.

Shearson previously moved for summary judgment[1] on the theory that Rule 10b–16 provided the exclusive remedy for injuries of the type claimed by Steinberg and argued that the documents it had submitted demonstrated its compliance with that rule. This Court denied Shearson's motion in an opinion reported at 546 F.Supp. 699 (D.Del. 1982). Thereafter, Steinberg moved for certification of this case as a class action, and the motion was denied by an Order of the Court dated August 19, 1983, on the ground that the individual issue of whether the statute of limitations had been tolled for each asserted class member predominated over those issues common to the class. Shearson has now moved for sum-

---

**1.** Shearson actually filed a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), but this motion was treated as a motion for summary judgment under Fed.R.Civ.P. 56, since it was accompanied by a supporting affidavit.

mary judgment again, this time on the ground that Steinberg's claims are barred by the statute of limitations. Steinberg has filed a cross motion for partial summary judgment, and one Frank Williams has filed a motion to intervene as the representative of a newly defined class.

## I. SUMMARY JUDGMENT

■ Because there is no federal statute of limitations for an implied cause of action under Rule 10b–5, the timeliness of such actions must be determined by applying the most closely analogous state law limitations period of the forum state. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1386 n. 29, 47 L.Ed.2d 668 (1976); *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980); *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979); *Hill v. Equitable Trust*, 562 F.Supp. 1324, 1333 (D.Del.1983); *Hill v. Der*, 521 F.Supp. 1370, 1379 (D.Del.1981). There are two possible limitations statutes available under Delaware law: the two year limitations period for blue sky law violations, 6 *Del.C.* § 7323(e), or the three year period for common law fraud, 10 *Del.C.* § 8106. The Third Circuit has adopted neither the blue sky limitations period nor the common law fraud period as exclusively applicable to 10b–5 cases. Rather, it has taken a functional approach aimed at promoting the policy of repose of the forum state and the substantive federal policy advanced by the federal cause of action.[2]

· ■ A basic consideration under both these approaches is whether an analogous state statute provides an equivalent remedy to the one sought under federal securities law.[3] Under the Delaware blue sky law, a civil plaintiff's remedies are limited to injunctive relief, 6 *Del.C.* § 7320, or rescission, unless he is an injured seller or purchaser who no longer holds the securi-

ties, in which case damages are available. 6 *Del.C.* § 7323(a)(2). In Steinberg's case, these remedies would not be appropriate, since he is not seeking rescission of the sale of securities purchased on margin but damages for excessive interest charges. Furthermore, under 6 *Del.C.* § 7323(b), a broker-dealer is liable to a purchaser of securities only "to the same extent as the seller." Because Steinberg has not alleged any fraud on the part of the sellers of the securities he purchased, Shearson would not be liable to Steinberg under § 7323(b). Rather, Steinberg's analogous state cause of action against Shearson would be for common law fraud, under which damages would be available regardless of whether or not Steinberg still held securities purchased on margin from Shearson. Thus, the applicable state limitations statute is the three year limitations period for common law fraud.

■ Although state law provides the limitations period for private actions under Rule 10b–5, federal law determines when the limitations period begins to run. *See Bailey v. Glover*, 21 Wall. 342, 349–50, 88 U.S. 342, 349–50, 22 L.Ed. 636 (1874); *Biggans v. Bache Halsey Stuart Shields, Inc.*, *supra*, at 607 n. 3; *Cook v. Avien*, 573 F.2d 685, 694 (1st Cir.1978); *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975); *Schaefer v. First Nat'l Bank of Lincolnwood*, 509 F.2d 1287, 1295 (7th Cir.1975); *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324, 1344 (D.Del.1983); *Hill v. Der*, 521 F.Supp. 1370, 1387 (D.Del.1981). Under the federal common law doctrine of equitable tolling, "when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered

---

**2.** *See Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979). In the Opinion of the Court, Judge Gibbons held that the basic inquiry was whether the suit would be time-barred if brought in state court, while Judge Sloviter, in a concurring opinion, emphasized the importance of selecting the limitations period that best com-

ported with federal policy. However, Judge Gibbons emphasized that he did not disagree with Judge Sloviter's approach. *Id.* at 456.

**3.** *See Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605, 608 (3d Cir.1980).

by, or becomes known to, the party suing ...". *Bailey v. Glover, supra,* 88 U.S. at 349–50.

A variety of tests have been formulated to implement this standard. Thus, in *Tomera v. Galt, supra,* at 510, the court stated that two types of circumstances may toll a statute of limitations under the doctrine of *Bailey v. Glover:* (1) when, as in the most common type of fraudulent behavior, the fraud goes undiscovered, even though the defendant does nothing to conceal it after commission of the wrong, and the plaintiff has diligently inquired into its circumstances; or (2) when the defendant takes positive steps to keep the fraud concealed after it has been committed. Other courts have adopted a modified version of the first branch of the *Tomera* test. These courts have taken the approach that the plaintiff must be put on notice by "storm warnings" that something is wrong before he is required to make diligent inquiries into the circumstances of the fraudulent transaction. Once the storm warnings appear, the statute continues to be tolled as long as the plaintiff makes diligent inquiries and will only begin to run if the plaintiff ceases to exercise due diligence. *See Cook v. Avien, supra,* at 696; *Hill v. Der, supra,* at 1387. As this Court noted in *Hill v. Equitable Bank, N.A.,* No. 82–220, Slip Op. at 23 (D.Del. Aug. 16, 1984), "once a plaintiff becomes aware or should have been aware, of sufficient 'storm warnings' of fraud to place the plaintiff on 'inquiry notice,' the plaintiff must exercise reasonable diligence in investigating the cause of action for fraud."

However, rather than regarding these various formulations as mutually exclusive tests of when equitable tolling is available, it is more accurate to view them as alternative formulas for applying a single standard under varying circumstances. When fraud has gone undiscovered for a period longer than the one specified in the applicable limitations statute, the basic issue is whether the plaintiff was negligent in not discovering it, or whether the fraud should have been discovered upon reasonable inquiry. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 692 (8th Cir.1981). As the court in *Cook v. Avien, supra,* at 696–97 noted, there are a variety of circumstances relevant to this inquiry, including the nature of the misleading statements alleged, the opportunity to discover the misleading nature of the statements and the subsequent actions of the parties. The sound approach is a functional one which balances these, and possibly other factors in light of the particular circumstances of each case. Thus, it may be that "storm warnings" are unnecessary to trigger the due diligence requirement in circumstances where the alleged fraud is particularly easy to discover.

Turning to the application of these principles to the facts of this case, there are five sets of allegations in Steinberg's complaint. Steinberg alleges (1) that Shearson failed to disclose the manner in which interest rates on its customers' margin accounts were calculated; (2) that Shearson failed to disclose that it used a 360-day year for computing interest; (3) that Shearson failed to disclose that amounts credited to customers' margin accounts would not be considered in computing interest charges; (4) that Shearson failed to disclose that appreciation in the market value of securities purchased on margin would not be considered in determining the extent of credit or in computing interest charges; and (5) that Shearson failed to disclose that its credit terms were negotiable.

The basic facts regarding Steinberg's behavior are simple and uncontroverted. Steinberg last engaged in margin account activity with Shearson on August 20, 1976. *See Steinberg v. Shearson Hayden Stone, Inc.,* No. 81–390, Slip Op. at 2 (D.Del. Aug. 19, 1983). Steinberg filed the complaint in this action on August 27, 1981. Thus, because the applicable limitations period is three years, Steinberg's claims will be time-barred unless he can avail himself of the doctrine of equitable tolling. Steinberg has testified at his deposition that he had no suspicion of any fraud on Shearson's part until 1981, when he read a newspaper

article about the large profits brokerage houses make on interest charges applied to their margin accounts.[4] Steinberg argues that the statute of limitations was tolled until he read this article and thus that he brought suit well within the limitations period. However, Steinberg admits that he never made any inquiries of Shearson concerning interest charges, either before or after he read the newspaper article.[5] Steinberg also insists that he never saw a Shearson document entitled "Statement of Credit Terms."[6] Shearson's Executive Vice President for Operations has stated in an affidavit that it was Shearson's policy, at all times relevant to the complaint, to send such a statement to each customer who opened an account.[7] For purposes of Shearson's motion for summary judgment, the Court will accept as true Steinberg's testimony that he never saw Shearson's Statement of Credit Terms.

To avail himself of the doctrine of equitable tolling, Steinberg must not have been negligent in failing to make inquiries concerning the interest terms on Shearson's margin accounts. Steinberg's testimony that he never saw Shearson's Statement of Credit Terms actually counts against him on this score. Had Steinberg seen the Statement, factual issues would have remained as to whether it was accurate, complete or misleading, or whether Shearson's actual credit practices always agreed with its stated policies. Not having seen the Statement, Steinberg cannot argue that he was lulled to sleep by its misleading nature. During the entire period that Steinberg maintained a margin account with Shearson he received monthly statements showing the amount and percentage of in-

terest he had been charged. Yet it never occurred to Steinberg to question these amounts, and he never asked Shearson for an explanation of how interest was calculated. He merely assumed that Shearson's interest charges would be the same as those he would have to pay a bank.[8]

Although issues of negligence usually involve disputes about historical facts, there are no historical facts in dispute here on the issue of equitable tolling. Rather, what is at issue is an "ultimate fact," the legal inference to be drawn from the admitted and undisputed historical facts. One might well conclude that "storm warnings" were unnecessary to trigger the due diligence requirement for equitable tolling under the present circumstances and that, under the functional approach put forward in *Cook v. Avien, supra,* Steinberg should have made inquiries concerning interest rates prior to the time he stopped trading with Shearson.[9] Certainly, the nature of the misleading statements was not such as to forestall inquiry—Steinberg has alleged a variety of failures to disclose, but no affirmative misrepresentations. Steinberg had ample opportunity to inquire about credit terms, and Shearson took no affirmative steps to conceal its alleged misstatements after Steinberg's account had been opened.

Nevertheless, under the standard for summary judgment in the Third Circuit, the Court is not permitted to draw this inference even under admitted factual circumstances as Dorically simple as these. For example, in *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (1976), a husband and wife brought an action against a manu-

---

**4.** Deposition of David Steinberg, Dkt. No. 54, at 61–62 (Feb. 24, 1983).

**5.** Deposition of David Steinberg, Dkt. No. 54, at 57, 111 (Feb. 24, 1983).

**6.** *Id.* at 108.

**7.** Affidavit of Leonard Haynes, Dkt. No. 11, at 2 (Dec. 31, 1981).

**8.** *See* Deposition of David Steinberg, Dkt. No. 54, at 57 (Feb. 24, 1983).

**9.** *See* Asbill & Snell, *Summary Judgment Under the Federal Rules—When an Issue of Fact is Presented,* 51 Mich.L.Rev. 1143, 1147 (1953) (dispute as to inferences to be drawn from admitted and undisputed facts does not prevent summary judgment); 10A C. Wright, A. Miller & Kane, *Civil Practice and Procedure* § 2725 (2d ed. 1983) (summary judgment usually should be granted when only question is what legal conclusions are to be drawn from established set of facts).

facturer of birth control pills after the wife became ill and died. Summary judgment was granted on the ground that the statute of limitations had run, but the Third Circuit reversed because the district court had improperly drawn inferences as to the plaintiff's state of knowledge based on the uncontested factual evidence. Because "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion," *id.* at 573, the trial court improperly concluded that the plaintiff knew or should have known that she had a claim before the statute had run. Similarly, in *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir.1982), an army reservist had sustained injuries allegedly caused by the defective design of a bulldozer manufactured by the defendant for the army. The district court granted summary judgment for the defendant, in part because it determined that the bulldozer met the specifications set out in the defendant's contract with the government, but the Third Circuit reversed and held that it was a factual issue for the jury to decide what the parties intended by the language of the contract and whether the actual design of the bulldozer conformed to it. *Id.* at 256. In each of these cases, there was no dispute as to the historical facts, but it was nevertheless held to be improper for the court to draw the inferences as to ultimate facts on which the motions for summary judgment were decided. *See Small v. Seldows Stationery*, 617 F.2d 992 (3d Cir. 1980); *Rosenthal v. Rizzo*, 555 F.2d 390 (3d Cir.1977); *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882 (3d Cir.1974); *Carpenter Internat'l., Inc. v. Kaiser Jamacia Corp.*, 369 F.Supp. 1138, 1139 (D.Del.1974). Thus, the Court concludes that, even though there is no dispute as to the historical facts relevant to the issue of equitable tolling in the instant case, the defendant's motion for summary judgment must be denied. Because there is an issue of ultimate material fact as to whether the statute of limitations was tolled, the plaintiff's cross motion for partial summary judgment is also denied.

## II. INTERVENTION

▮▮▮ Frank Williams has filed a motion to intervene of right in this suit under Fed.R.Civ.P. 24(a)(2) or, in the alternative, by permission of the Court under Fed.R. Civ.P. 24(b). Williams' complaint is virtually identical to Steinberg's amended complaint, except that Williams seeks to represent a class of Shearson customers who traded on margin between August 28, 1978 and December 31, 1983. Steinberg had originally sought to represent a class of Shearson margin account customers who purchased securities between June 1, 1976 and April 30, 1981. Thus, some of the members of the class that Williams seeks to represent were putative members of Steinberg's original class. Nevertheless, Williams is in error in believing that this by itself gives him a right to intervene. The cases cited by Williams in support of his view stand for the proposition that the filing of a class action tolls the statute of limitations for all asserted class members who would have been parties had the class been certified.[10] It by no means follows, however, that because intervention will not be barred by the statute of limitations, it must be granted. As the Supreme Court has stated, "[p]utative class members frequently are not entitled to intervene as of right under Fed.Rule Civ.Proc. 24(a), and permissive intervention under Fed.Rule Civ.Proc. 24(b) may be denied in the discretion of the District Court." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Thus, Williams' petition for intervention of right must be decided by applying the test set out in Fed.R.Civ.P. 24(a)(2).

### A. Intervention of Right

There are three requirements for intervention of right under Fed.R.Civ.P. 24(a)(2);

---

**10.** *Chardon v. Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1973).

(1) the applicant must claim an interest relating to the property or transaction, which is the subject of the action; (2) the applicant must be situated so that disposition of the action could as a practical matter impair his ability to protect his interest, and (3) the applicant's interest must not be adequately represented by the existing parties.

The transactions at issue in Steinberg's case occurred no later than August 20, 1976, the last date on which Steinberg engaged in margin account activity with Shearson.[11] Williams' first margin transaction with Shearson was in February, 1980.[12] Thus, it appears that Williams has no interest in the transactions involved in Steinberg's suit and, *a fortiori*, that no interest of Williams could be impaired by the disposition of Steinberg's case.[13]

 Although this analysis might have been dispositive of Williams' petition for intervention of right under the pre-1966 version of Fed.R.Civ.P. 24(a)(2), the 1966 amendment of this rule was intended to liberalize the conditions under which intervention of right is available. In particular, it eliminated the requirement that the applicant for intervention be bound by a judgment in the action.[14] Under the pragmatic approach of the 1966 amendment, it is no longer necessary for the applicant to show that he would be barred by res judicata or collateral estoppel from asserting his claim in a subsequent action. Rather, any "practical impairment" of the intervenor's ability to protect his interest may give him a right to intervene. Even the adverse impact of stare decisis may be enough. *See Atlantis Dev. Corp. v. United States*, 379 F.2d 818 (5th Cir.1967); *Corby Recreation, Inc. v. General Elec. Co.*, 581 F.2d 175 (8th Cir.

1978); *Francis v. Chamber of Commerce of the United States*, 481 F.2d 192 (1973); *Florida Power Corp. v. Granlund*, 78 F.R.D. 441 (D.C.Fla.1978); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 24.07[3] at 24–65 (2d ed. 1982); 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1908, at 515 (1972). Viewed from this broader perspective, Williams may have the requisite interest in the disposition of this suit, for although the transactions of Steinberg and Williams covered different time periods, the allegations involved in the two complaints are otherwise virtually identical. Furthermore, a Shearson executive has testified that Shearson did not change its policy or practice regarding disclosure of credit terms on margin accounts between June 1, 1976 and April 30, 1981,[15] a period that includes both Steinberg's and some of Williams' transactions. Thus, the stare decisis effect of a disposition of Steinberg's remaining claims could, as a practical matter, impair Williams' ability to establish the corresponding claims of his complaint.

Admittedly, a finding of impairment of interest in this situation would stretch the meaning of that concept, but the Court need not base its decision regarding intervention of right on a lack of impaired interest, for the third requirement for intervention under Rule 24(a)(2)—that the intervenor's interest not be adequately represented by the existing parties—provides a clear basis for decision. Even assuming that Williams has a sufficient interest in the transactions involved in Steinberg's suit and that resolution of this suit would impair Williams' ability to protect this interest, the Court must also find that Steinberg does not adequately represent Williams' interest.

---

**11.** *Steinberg v. Shearson Hayden Stone, Inc.*, No. 81–390, Slip Op. at 2 (D.Del. Aug. 19, 1983).

**12.** Affidavit of Frank Williams, Dkt. No. 73, at 1 (May 4, 1984).

**13.** Even if Williams were certified as the representative of the class of Shearson customers who purchased securities on margin from August 28, 1978 through December 31, 1983, there would be no overlap between the transactions of any members of this class and those involving Steinberg. Because it is unnecessary in order to decide the issue of intervention, the Court does not decide whether Williams may be certified as class representative.

**14.** *See* Fed.R.Civ.P. 24, Committee Note of 1966.

**15.** *See* Affidavit of Leonard Haynes, Dkt. No. 11, at 2 (Dec. 31, 1981).

The weight of authority holds that the burden of proving inadequacy of representation is on the party seeking intervention, although this burden is a minimal one. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *Delaware Valley Citizens' Council v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir.1982); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir.1982); *Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 273 (3d Cir.1980); *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976); *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 98 F.R.D. 254, 281 (D.Del.1983); *Pierson v. United States*, 71 F.R.D. 75, 78 (D.Del.1976); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 24.07[4] at 24–70 (2d ed. 1982).[16]

■ At least one court has held that when the same attorney represents both the proposed intervenor and the original plaintiff, adequacy of representation must be presumed. *See Carroll v. American Fed. of Musicians*, 33 F.R.D. 353 (S.D.N.Y. 1963).[17] Certainly, the fact that an intervenor has retained the same attorney as that of an existing party is a strong factor pointing to adequate representation. However, the better view is that this factor by itself is not dispositive and that adequacy of representation depends on a variety of factors. Thus, in the leading case of *Stadin v. Union Elec. Co.*, 309 F.2d 912 (8th Cir.1962), *cert. denied*, 373 U.S. 915, 88 S.Ct. 1298, 10 L.Ed.2d 415 (1963), the court set out three factors pointing to inadequate representation: (1) proof of collusion between the representative and an opposing party; (2) the representative having an interest adverse to the intervenor and (3) the

failure of the representative in the fulfillment of his duty. These factors are not exhaustive.[18] As we have noted, the representative and the intervenor having the same counsel would be relevant, as would the incompetence of the representative's counsel.[19] Nevertheless, the most important factor to consider is the relation of the representative's interest to that of the proposed intervenor. As a leading treatise has declared,

> The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate. Finally, if his interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.

7A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1909 at 524 (1972).

■ In the instant case, it is appropriate to measure the interests involved by the results that are sought.[20] Steinberg's interest is to have Shearson found guilty of securities fraud on the ground that Shearson failed to disclose information concerning interest rates charged to its margin account customers. Insofar as Williams

---

**16.** *But see* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1909 at 521 (1972) (burden of showing adequate representation shifted to opposing party by 1966 amendment). Because of the overwhelming weight of authority *contra* in the Third Circuit, the Court is compelled to reject the view of Wright and Miller.

**17.** Although *Carroll* was decided prior to the 1966 amendment of Rule 24, there is general agreement that the amended rule did not change the meaning of "adequate representa-

tion." *See United States v. I.B.M.*, 62 F.R.D. 530, 537 n. 13 (S.D.N.Y.1974); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 24.09–1[4] at 24–314 (2d ed. 1982).

**18.** *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1909 at 523 (1972).

**19.** *See United States v. I.B.M.*, 62 F.R.D. 530, 538 (S.D.N.Y.1974).

**20.** *See Id.* at 536.

has any interest at all in Steinberg's case, it is in the stare decisis effect this case may have on Williams' own subsequent suit. Williams' interest is in protecting himself against the adverse precedent that would result from a decision against Steinberg. Thus, Williams' interest is the same as Steinberg's and will be protected if Steinberg either settles or diligently prosecutes his own suit.

There is no reason to think that Steinberg is in collusion with Shearson. Steinberg has not failed in the fulfillment of his duty nor is he incompetent as a representative. The fact that Steinberg and Williams have the same counsel speaks loudly against any such claims. The Court is compelled to conclude that Williams has not met his burden of showing that his interest in this case is not adequately represented by Steinberg, and Williams' petition to intervene as of right is denied.

### B. Permissive Intervention

Under Fed.R.Civ.P. 24(b) intervention may be permitted in the discretion of the court upon timely application when an applicant's claim and the main action have a question of law or fact in common, provided intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. While it is true that Williams' claims contain some issues of law in common with Steinberg's action, it is also true that there are significant differences between the two sets of claims. In the first place, the factual issues underlying the common legal issue are different for Steinberg and Williams. For example, Steinberg insists that he never received a Statement of Credit Terms from Shearson,[21] while Williams has affied that he does not recall whether he ever received such a Statement.[22] In the second place, Steinberg still faces the hurdle of the statute of limitations in his action while Williams, who last traded on margin with Shearson in July 1982, falls well within the limitations period. Finally, Williams would also have to litigate any issues arising out of his asserted role as class representative.[23] Adjudication of these additional issues would undoubtedly delay the adjudication of the rights of the original parties.

Although there are common questions of law involved in Williams' and Steinberg's claims, this merely satisfies the threshold requirement for permissive intervention and allows the Court to exercise its discretion.[24] Under these circumstances, where the factual issues are different, the legal issues are partially different and intervention would significantly delay the adjudication of Shearson's rights, it would be inappropriate to permit Williams to intervene.[25] Williams' motion to intervene is therefore denied.

---

**21.** Deposition of David Steinberg, Dkt. No. 54, at 108 (Feb. 24, 1983).

**22.** Affidavit of Frank Williams, Dkt. No. 73, Ex.A, at A1 (May 4, 1984).

**23.** These issues include whether Williams may be certified as a class representative and how the class should be defined.

**24.** *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1911 at 541–42 (1972).

**25.** Because the Court considers these factors to be dispositive, it is unnecessary to decide whether Williams' motion to intervene was timely.