**In re IVAN F. BOESKY SECURITIES LITIGATION.**

**HOME SHOPPING NETWORK, INC., Plaintiff,**

v.

**DREXEL BURNHAM LAMBERT INCORPORATED, et al., Defendants.**

**This Document Relates only to this Case.**

**No. M21–45–MP.**

**MDL No. 732.**

**No. 89 Civ. 5755 (MP).**

United States District ·Court, S.D. New York.

Jan. 30, 1990.

Charles Wachter, Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, Fla., for plaintiff Home Shopping Network, Inc.

Debra L. Brown, Cadwalader Wickersham & Taft, New York City, Lead/Liaison Counsel, for plaintiffs Arden Way.

Stanley Nemser, Wolf Popper Ross Wolf & Jones, New York City, Lead/Liaison Counsel, for plaintiffs (Class action).

David Parker, Kleinberg Kaplan Wolff & Cohen, New York City, A. Gilchrist Sparks, III, Morris Nichols Arsht & Tunnell, Wilmington, Del., for proposed intervenors Rochester Convertible Growth Fund, Rochester Growth Fund, Inc., Werner Zimmerman and Mirjam Zimmerman.

Lawrence Jacobs, Paul Weiss Rifkind Wharton & Garrison, New York City, for defendant Michael R. Milken.

William F. Cavanaugh, Jr., Patterson Belknap Webb & Tyler, New York City, for defendant Drexel Burnham Lambert Inc.

## OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

Rochester Convertible Growth Fund, Rochester Growth Fund, Inc., Werner Zimmerman and Mirjam Zimmerman (referred to hereinafter collectively as the "Intervenors"), on behalf of themselves and on behalf of the putative classes they represent, have moved to intervene under Rule 24, Fed.R.Civ.P., in the above-captioned proceedings. Home Shopping Network, Inc. ("HSN"), plaintiff in a constituent action in the above proceedings, supports the motion for intervention and cross-moves, in addition or as an alternative, to join the proposed Intervenors through amendment or joinder pursuant to Rules 15(a), 20 and/or 21, Fed.R.Civ.P.; to transfer the HSN action to the Middle District ·of Florida pursuant to 28 U.S.C. § 1404(a); and/or for a recommendation to the Judicial Panel on Multidistrict Litigation to return the HSN action to Florida pursuant to 28 U.S.C. § 1407.

For the reasons set out below, the proposed Intervenors' motion and HSN's cross-motions are to be denied.

### Background

The proposed Intervenors are owners of debentures issued by HSN for a $100 million Eurodollar offering abroad in 1987 of

5–½% Convertible Subordinated Debentures due April 22, 2002 (the "Debentures"). The Debentures were issued under an indenture, executed in New York, dated April 22, 1987 (the "Indenture"), as supplemented by an indenture dated May 15, 1987 (the "Supplemental Indenture"). HSN is a Delaware corporation with its headquarters in St. Petersburg, Florida.

The conversion rate of the Debentures into stock of HSN is questioned in the litigations referred to herein, but on different grounds for different relief.

There are two separate actions of relevance to the motions before the Court. The first was brought in the Middle District of Florida by HSN against Drexel Burnham Lambert International Limited ("Drexel") and their alleged coterie; none of the public Debenture holders was joined as a party or represented therein. HSN in that suit claims to be aggrieved that Drexel, the underwriter of the Debentures, gave HSN allegedly fraudulent advice which HSN followed committing it to the Debenture conversion ratio set forth in the Supplemental Indenture. The Florida court ruled that joinder of the public bondholders was not necessary for an adjudication of HSN's claims against Drexel.

The second suit was brought against HSN in the Delaware Court of Chancery by public investors who purchased the Debentures in reliance on the supplemented Indenture, namely the proposed Intervenors herein. In this suit the public investors seek to enforce the supplemented Indenture according to its terms for conversion of the Debentures.

*Debentures:*

The Debentures were issued and sold on April 22, 1987 in the Eurodollar market pursuant to an offering circular, dated March 31, 1987. Drexel was the underwriter of the Debentures and Bankers Trust Company ("Bankers Trust") was the named trustee under the Indenture. HSN filed a listing application (No. 14928) on March 9, 1987, with the American Stock Exchange, which listed shares of its common capital stock to be issued upon conversion of the Debentures. Those shares were also registered under Form S–1 with the United States Securities and Exchange Commission on March 10, 1987.[1] The original Indenture provided that the Debentures were convertible into shares of HSN common stock at $25.80 per share, a price calculated as 20% higher than the market price at the time the offer was priced on March 26, 1987. At the $25.80 per share rate, each $1,000 face Debenture would be convertible into approximately 38.76 shares of HSN common stock. Pursuant to Section 1015 of the Indenture, HSN undertook to

at all times reserve and keep available and free from preemptive rights, out of its authorized Common Stock, solely for the purpose of issue upon conversion of Securities ... such number of shares of Common Stock as shall then be issuable upon the conversion of all outstanding Securities.....

The original Indenture further provided that the conversion price could be reset under certain circumstances.

HSN supplemented the original Indenture as of May 15, 1987, pursuant to which the conversion price of the Debentures became automatically subject to reset effective April 22, 1988, to the lower of i) the current conversion price then in effect ($25.80), or ii) 120% of the average of the last reported sales price of HSN common stock for the 30 days prior to April 22,

---

1. HSN originally intended to issue both a domestic and a Eurodollar offering of Debentures. Apparently as a result of the drop in the price of its stock, HSN reduced the Eurodollar offering from $150 million to $100 million and completely eliminated the planned domestic offering. Amendment No. 1 to Form S–1 was filed with the SEC on March 10, 1987, and Amendment No. 2 was filed on May 11, 1987. Both reflected these reductions in the offering of Debentures. In addition, HSN filed four Post-Effective Amendments to Form S–1 respectively on May 31, 1988; September 23, 1988; January 11, 1989; and December 6, 1989. All four post-effective amendments were filed subsequent to the institution of the Florida action and the date for the reset of the conversion price.

The listing application and the registration and subsequent filings are a matter of public record and were supplied to the Court by Lead/Liaison Counsel in MDL Dkt. No. 732.

1988. HSN issued a press release to the public on April 28, 1987, which stated in part:

> The debentures include a provision for a reset of the conversion price after one year, under which, the conversion price may be lowered in the event the average sale price of HSN's shares for thirty trading days prior to the reset date, April 22, 1988, plus a twenty percent premium, is lower than the current conversion price.

HSN then issued a May 12, 1987 Offering Circular Supplement to the March 31, 1987 Offering Circular notifying the public of the new reset conversion price. The Supplement was filed with the American Stock Exchange on August 5, 1987 with HSN's amended Listing Application No. 14928.[2]

The market price of the stock issuable on conversion dropped drastically in the intervening year or so between the date of the Supplemental Indenture and the date on which the conversion rate was to be reset. The price of the common stock in March 1987, when the Indenture was priced, was approximately $20.64 per share. According to public reports, HSN's stock declined to 13⅝ by May 22, 1987. By October 13, 1987, the price of the stock was 11¼; and, following the October 19th stock market crash, HSN's stock closed at 6½ on October 23, 1987. Thus, the conversion price as of April 22, 1988, was automatically to be reset at $7.05, which represented 120% of $5.88, the average reported sales price for HSN stock for the 30 days preceding April 22, 1988. At such a conversion rate, a $1,000 face Debenture was convertible into approximately 141.84 shares of HSN common stock.

*Middle District of Florida Action:*

On April 18, 1988, only four days before the reset conversion price was to take ef-fect under the supplemented Indenture, HSN filed a fraud suit against Drexel, Michael Milken, Allen Rosenthal and Joel L. Gold in the United States District Court for the Middle District of Florida, charging that HSN had been fraudulently advised by those defendants to modify the original conversion terms of the Debentures to those set forth in the Supplemental Indenture. The complaint alleged further that, pursuant to a secret conspiracy with the other defendants, Drexel had, through market manipulation, caused the market price of HSN stock to be depressed during the 30 days prior to the April 22, 1988 reset date. None of the public Debenture holders was joined, individually or as a class, in the suit or were represented therein.

Shortly after the Florida suit was instituted, HSN issued a press release and notice to all holders of the Debentures, stating, *inter alia,* that in its Florida lawsuit it had requested that the reset provisions contained in the Supplemental Indenture be rescinded and declared void on the grounds that, among other things, HSN was fraudulently induced to enter into the Supplemental Indenture after the closing of the transaction and that HSN received no legal consideration whatsoever for having entered into the supplemental indenture and that HSN sought reinstatement of the original conversion price. The notice stated, in part:

> HSN intends to honor all provisions of the Indenture and the Supplemental Indenture including, without limitation, the reset provision contained in the Supplemental Indenture until such time as a court finally determines whether the Supplemental Indenture should be rescinded and the reset provision nullified. Until such a final determination is made, the Company intends to affix an appropriate legend to stock certificates repre-

---

2. The Offering Circular Supplement stated:
   *Conversion Price Reset.* The Company is entering into a Supplemental Indenture, dated as of April 22, 1987, between the Company and Bankers Trust Company, as Trustee ..., relating to the Company's 5½% Convertible Subordinated Debentures due April 22, 2002 (the "Debentures"). The Supplemental Indenture will provide that the Conversion price (as defined in the Indenture) for the Debentures will automatically be reset on April 22, 1988 to equal the lower of (a) the Conversion price then in effect or (b) 120% of the average of the last reported sales prices of the Common Stock for the 30 trading days ending on the trading day immediately prior to April 22, 1988.

senting that number of shares of HSN Common Stock issued upon conversion of the Convertible Debentures which exceed the number of shares which would have been issued at the original conversion price of $25.80. The legend will identify such shares as ones which may be canceled in the event that the Company prevails in the lawsuit and the original conversion price of $25.80 per share of HSN Common Stock is reinstated.

In its amended complaint, dated May 16, 1988, HSN alleged:

HSN agreed to grant this reset only because the Drexel Defendants repeatedly lied to HSN, stating that without the reset HSN would fail in its objective of securing long-term European equity investors who would help stabilize HSN's stock.

The Drexel defendants, however, concealed from HSN that they were incapable of and never intended to market the Convertible Debentures to long-term European equity investors, but instead secretly planned to funnel the Convertible Debentures back to Drexel's "junk bond network" in the U.S. for the purpose of manipulating HSN's stock.

HSN demanded an injunction against the defendants' [Drexel's] transfer of the Debentures and a judgment rescinding and declaring the Supplemental Indenture containing the lower reset price null and void and reinstating the original conversion price.

HSN also demanded judgment against the trustee, Bankers Trust, for rescission of the Supplemental Indenture and reinstatement of the original conversion price. HSN made no allegation that Bankers Trust had participated in defendants' fraudulent scheme; HSN confirmed that Bankers Trust was named as a defendant only because of its position as trustee.

The amended complaint further sought a preliminary declaratory judgment that "HSN is entitled to place a notice legend on certain converted stock, that HSN is not in default under the Indenture, and that placing a notice legend on certain converted stock would not constitute an event of default under the Indenture." Bankers Trust, as trustee, petitioned the court for preliminary injunctive relief on July 18, 1988, to prevent HSN from legending any stock issued on conversion of Debentures.

In an order dated October 11, 1988, the Florida Court made a preliminary ruling, in pertinent part, that: i) Bankers Trust's motions to dismiss and for a preliminary injunction against the legending were denied and ii) HSN's "proposed legending of the contested shares will not constitute a default under the indenture agreement." At the argument of the motion to intervene in this Court on January 22, 1990, HSN's counsel stated that the Florida Court's order was to be read as a direction to legend only shares thereafter issued upon conversion of Debentures submitted to the transfer agent. (Such a limit, however, is not expressed in the broad language of the order.) Thereafter, the legend was affixed (apparently by the transfer agent of HSN securities) on a portion of the shares of HSN's common stock upon the conversion of Debentures.[3]

Pursuant to 28 U.S.C. § 1407, the Florida action was transferred on August 11, 1989, to the Southern District of New York and assigned to this Court by the Judicial Panel on Multidistrict Litigation for purposes of consolidated or coordinated pretrial proceedings and made part of *In re Ivan F. Boesky Securities Litigation,* MDL Dkt. No. 732.

### Delaware Court of Chancery Action:

On June 16 and June 21, 1989, the proposed Intervenors as public investors in the Debentures filed two class actions against HSN in the Court of Chancery of the State of Delaware. The complaints alleged that the "attempted rescission of the Supplemental Indenture and HSN's policy of leg-

---

**3.** HSN's amended complaint further sought an order that the defendants [the Drexel group] in the Florida action, except the nominal defendant Bankers Trust, be required "to submit each Convertible Debenture to the Trustee for the purpose of having it legended in accordance with the Court's order." It does not appear that any such order was issued, and there is no indication in the record that any Debentures were ever submitted by Drexel to be legended.

ending HSN common stock certificates has impaired the alienability of both the Debentures and the legended shares and has disrupted the market for both...." and that "HSN's actions violate Delaware law by purporting to limit the alienability of shares of a Delaware corporation." The Intervenors sought declaratory and equitable relief "compelling HSN to comply with Delaware statutory requirements and the terms of the Indenture and Supplemental Indenture and ordering HSN to issue unlegended stock certificates for the shares of HSN that are required to be transferred to plaintiffs ... upon conversion ... of a portion of the Debentures...."

In August 1989, HSN moved to dismiss or stay the Delaware suits. In a Memorandum Opinion dated September 1, 1989, revised on September 11, 1989, Vice Chancellor Jacobs ruled that "(1) plaintiffs are not guilty of laches, (2) the doctrine of collateral estoppel does not preclude the assertion of the plaintiff's [sic] claims, (3) these actions will be stayed to allow the plaintiffs the opportunity to seek relief in the Florida action, and that (4) the challenges to legal sufficiency (that is, the merits) of the plaintiff's [sic] claims will not be addressed, as these should be determined by the Florida Court or the Southern District of New York, as the case may be."

Vice Chancellor Jacobs placed his stay on principles of comity, stating that, "Having considered all the circumstances, I am constrained to conclude that the interests of promoting comity between sister courts outweighs the plaintiffs' interest in litigating in Delaware.... In arriving at this conclusion the Court has assumed (and certainly has no reason to believe otherwise) that (i) HSN will cooperate in the plaintiffs' effort to intervene in, and present their claims before, the Court in which the Flor-

ida action is pending, and (ii) that Court will entertain the plaintiffs' claims.... Should either or both of the foregoing assumptions not be borne out, the plaintiffs may seek an order dissolving the stay."

As this Court now has jurisdiction over the Florida action for all pretrial purposes pursuant to 28 U.S.C. § 1407, we now address Vice Chancellor Jacobs' second assumption—namely, that this Court might entertain the proposed Intervenors' claims in the multiple suits consolidated in MDL Dkt. No. 732 before this Court.

*Discussion*

It is clear from the pre-motion conference on September 22, 1989, if somewhat ironic, that the proposed Intervenors have made this motion to intervene but would much rather have the motion denied so that they could seek an order dissolving the stay of the Delaware Court of Chancery and proceed therein. HSN, on the other hand, apparently would subjectively like nothing better than to enmesh the Intervenors in the mélange of litigations consolidated in MDL Dkt. No. 732 and in the complicated phases of the discovery process there involved that would, as a practical matter, preclude angling out the limited interest in discovery concerning the supplement to the Indenture. A press report has intimated that HSN apparently is acquiring outstanding Debentures at the depressed prices due to the legend controversy and is thus profiting at the expense of the holders who are jettisoning their Debentures because of the legend cloud.[4, 5]

Under Rule 24, Fed.R.Civ.P., there are two separate avenues for intervening in an action—as of right, pursuant to Rule 24(a), and by permission of the court, pursuant to Rule 24(b). We will discuss each branch of Rule 24 in turn.

---

**4.** While there is no evidence in the papers before the Court to corroborate such activity, the article poses an interesting, even if unreliable, speculation. At all events, no credence is placed on it for purposes of these motions which will be addressed on their merits.

**5.** As an alternative to intervention in MDL Dkt. No. 732, HSN has moved to sever the Inter-

venors' claims which are not yet before this Court and remand them to the Middle District of Florida. This alternative, however, is a red herring, as HSN claims that in such an event it still would attempt to gain discovery from the so-called Drexel group in MDL Dkt. No. 732 in the quagmire of claims therein.

### A. Intervention as of Right: Rule 24(a)(2):

#### 1. Standard:

In order to intervene as a matter of right pursuant to Rule 24(a)(2) [6], the proposed Intervenors must i) have filed timely, ii) demonstrate an interest in the litigation in which intervention is sought, iii) show an impairment of that interest as a practical matter arising from an unfavorable disposition and iv) not have been otherwise adequately represented in the action in which intervention is sought. *See United States v. State of New York,* 820 F.2d 554, 556 (2d Cir.1987); *H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 797 F.2d 85, 87–88 (2d Cir.1986); *see also,* 7C C. Wright, A. Miller and M. Kane, *Federal Practice & Procedure,* § 1908, at 262 (1986).

There is no question that the proposed Intervenors have timely filed their motion to intervene. Nor, despite HSN's assertions to the contrary, were the Intervenors' interests represented, adequately or otherwise, by Bankers Trust or anyone else in the Florida action. Rather, the intervention as a matter of right hinges on whether the proposed Intervenors have, on balance, the requisite interest in these MDL Dkt. No. 732 proceedings and the ramifications of the massive situation involving Drexel, Milken and others herein and whether the Florida claim and preliminary Florida ruling, ostensibly limited as it is to Drexel et al., in a controversy remote from the consolidated concerns of MDL Dkt. No. 732, require for the protection of their interest that the Debenture holders be joined in this atmosphere wholly foreign to their concerns.

Simply put, the answer to both questions is no. The proposed Intervenors do not meet the applicable standard and they are not entitled to intervention as a matter of right. HSN is here to pursue a discrete grievance which appears to concern its motivation for supplementing an indenture. Offhand, it appears farfetched to require the Debenture holders to mark time on their claims while HSN pursues those who are said to have misled HSN in a matter free of any connection to public investors relying on the integrity of the conversion rate for the Indentures.

#### 2. "Interest":

What constitutes an "interest" under Rule 24(a)(2) is a complicated question. *See, e.g.,* 7C Wright, Miller & Kane, *supra,* at 262 ("There is not as yet any clear definition, either from the Supreme Court or from the lower courts, of the nature of the 'interest relating to the property or transaction which is the subject of action [sic]' ... Indeed, it may well be, as some courts have suggested, that this is a question not worth answering.").

The question becomes even more complicated here because of the procedural posture of aborted proceedings in the Florida action which allege collateral claims against Drexel, Ivan Boesky, Michael Milken and others but in which no public investors holding Debentures lawfully issued and outstanding participated. No suggestion is made that the bondholders had anything to do with the dealings between HSN and Drexel or the other multiple defendants in MDL Dkt. No. 732, or were cognizant thereof or a party thereto or were involved in establishing HSN's terms of conversion to HSN stock in the Indenture.[7] Nor have the proposed Intervenors made any claim against Drexel or any other party in MDL Dkt. No. 732 other than HSN pertinent to the conversion rate of the Debentures; and none of those parties have

---

**6.** Rule 24(a), Fed.R.Civ.P., provides, in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the ap-

plicant's interest is adequately represented by existing parties.

**7.** Indeed, as recently as January 15, 1990, HSN's lawyers represented in a letter to counsel for the proposed Intervenors that: "HSN does not intend (prior to discovery of additional facts) to allege that the Zimmermans or the Rochester Fund were part of Drexel's scheme."

made any claims against the proposed Intervenors.

### 3. Impairment of Interest:

Rather than addressing "interest," courts have looked to the policies that underlie the "interest." According to one of the leading cases interpreting Rule 24(a)(2), "the first requirement of Rule 24(a)(2), that of an 'interest' in the transaction, may be a less useful point of departure than the second ... requirement, that the applicant may be impeded in protecting his interest by the action...." *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C.Cir.1969) (en banc) (Bazelon, J.).

Here, it is *HSN* which asserts that the Florida court's order "has adversely affected the Proposed Intervenors' asserted interest and the outcome of this lawsuit may further impair the Proposed Intervenors' interests." (HSN Mem. 16).

Despite HSN's assertion, however, the preliminary Florida ruling does not impair or impede any interest of the proposed Intervenors as a practical or legal matter in any way. As the Delaware Vice Chancellor held in his September 1, 1989 Memorandum and Order, the proposed Intervenors and the classes they represent are not legally bound by the preliminary ruling in Florida as a matter of collateral estoppel or res judicata because they were not parties to and their interests were not represented in the Florida action.

Additionally, given the preliminary procedural nature of the Florida ruling, no doctrine of stare decisis might appropriately be urged in a court with jurisdiction of the parties requisite to a ruling on the validity of the supplement to the Indenture. *cf. Nuesse v. Camp*, 385 F.2d 694 (D.C.Cir. 1967) (stare decisis principles may in some cases supply the practical disadvantage that warrants intervention as of right) (cited in 7C Wright, Miller & Kane, *supra*, § 1908 at 303 n. 60.).

**8.** In pertinent part, Rule 24(b), Fed.R.Civ.P., provides: "Upon timely application anyone may be permitted to intervene in an action: ... (2)

### B. Permissive Intervention: Rule 24(b):

The proposed Intervenors are not entitled to intervention as a matter of right; neither will this Court exercise its discretion to grant them permissive intervention pursuant to Rule 24(b).[8]

"If the would-be intervenor's claim or defense contains no question of law or fact that is raised also by the main action, intervention under this branch of the rule must be denied." 7C Wright, Miller & Kane, *supra*, § 1911, at 358 (see generally, cases cited in margin).

Whether the proposed Intervenors' claims to the conversion rights share any question of law or fact with the claims brought in the Florida action is doubtful. As stated, the proposed Intervenors allege no claims against Drexel, Milken, or any of the other defendants in HSN's damage suit; nor do any of those defendants assert any claims against the proposed Intervenors or the classes they represent.

HSN did amend its Florida complaint to seek declaratory relief in regard to the legends. This Court is unconvinced that HSN's allegations of fraud against Drexel have any relevance to or nexus with the rights of Debenture holders under the Indenture freely adopted between HSN and its Debenture holders. At the very least, the proposed Intervenors would seem to have no common question of law or fact pertaining to the proceedings currently pending before this Court in MDL Dkt. No. 732.

Even if there were a common question of law or fact that would be merely the beginning of this Court's analysis under Rule 24(b): "If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention." *Id.* at 358–363; *see Steinberg v. Shearson Hayden Stone, Inc.*, 598 F.Supp. 273, 282 (D.Del.1984) (Wright, J.).

In his September 11, 1989 Memorandum and Order, Vice Chancellor Jacobs stated that an important reason for his stay was a

when an applicant's claim or defense and the main action have a question of law or fact in common."

concern for comity. While Vice Chancellor Jacobs' concern for "promoting comity between sister courts" is in every respect appropriate, this Court has no interest in hearing the proposed Intervenors' discrete claims which are so tangential, if not completely unrelated, to the proceedings and concerns of MDL Dkt. No. 732.

Indeed, in an Order of the Florida Court dated April 28, 1989, the Florida Court expressly recognized the discrete nature of the public Debenture holders' claims. In denying defendants' motion to dismiss based on plaintiff's failure to join the bondholders as allegedly indispensable parties to the litigation, the Florida Court flatly stated that "the bondholders are *not* parties to be joined if feasible...." within the requirements of Rule 19(a), Fed.R.Civ.P., "because the chief target of plaintiff's complaint is the Drexel defendants, and because the bondholders need not [ ] be present to effect relief against those defendants, complete relief can be accorded among those already parties." (emphasis supplied).

Stated another way, the legend problem presented in the Florida action could only implicate Drexel on the suggestion that Drexel might be the holder of unsold or reacquired Debentures or converted stock. To protect HSN in that regard against Drexel could not be grounds to prejudice the Debentures held by public investors having no association with Drexel. To legend Debentures or stock held by public investors, a court would need personal jurisdiction of the holders. As already mentioned, the Florida Court acknowledged that the bondholders were not before it and that it regarded the relief sought in Florida to be against Drexel, "the chief target of plaintiff's complaint," and "bondholders need not [ ] be present to effect relief against" the Drexel defendants. In contrast, the Delaware Court can effect the relief sought by the bondholders, as it has jurisdiction of the necessary parties to the discrete issue posed by the Debenture holders.

Not only was the Delaware court the first court to be able to address the question of relevance to the public Debenture holders, it is also the court best-suited to address that question. As the unrestricted alienability of common stock—namely, the voting common capital stock of a Delaware corporation issuable on conversion of Debentures—is at stake, the controversy between HSN and the proposed Intervenors clearly impinges on the internal affairs of a foreign corporation, actually and by analogy. It is well-settled as a matter of conflict of laws doctrine "that a court—state or federal—sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State but will leave controversies as to such matters to the courts of the State of the domicile." *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130, 53 S.Ct. 295, 297, 77 L.Ed. 652 (1933) (suit to enjoin the issuing and selling of stock and to annul the shares issued) (citations omitted). *See also*, Restatement (Second) of Conflict of Laws § 313 comment c (1971) ("When the interest of the state of incorporation in the issue at hand is greater than the interest of the state of the forum, the court may refuse to entertain the suit on the ground that it should be properly be brought in the former state."). The legend raises analogous considerations.

No court in Florida or New York is as well-suited to address an issue ultimately concerning the proper capitalization and the rights of common stockholders of a Delaware corporation as a court in Delaware, the state of HSN's incorporation. Indeed, even were this Court to agree that the proposed Intervenors were entitled to make out a semblance of a claim to intervention, we ought nevertheless decline jurisdiction on the discretionary grounds that "considerations of convenience, efficiency and justice point to the courts of the State of domicile" as the appropriate tribunal for the determination of this particular case, especially where, as here, the Delaware Court alone has the requisite personal jurisdiction. *See Rogers*, 288 U.S. at 131. The exercise of such discretion would be especially appropriate here given the fact

that Delaware has long been recognized as the fountainhead of American corporations and that its Courts of Chancery are known for their expert exposition of corporate law.

### C. HSN's Cross–Motions:

HSN has cross-moved for leave to amend its claims against Drexel, et al., under Rules 15(a), 20 and/or 21, Fed.R.Civ.P.; and seeks also a transfer of the entire HSN action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a); also for a recommendation that the entire action be remanded to Florida pursuant to 28 U.S.C. § 1407. Those belated motions are denied. We have already pointed out that the Florida Court has rejected the inclusion of the Debenture holders in that suit. Nothing in HSN's papers suggests a valid reason for undoing that ruling or the considered action of the Judicial Panel on Multidistrict Litigation in transferring HSN's broad claims against Drexel, et al., to this Court for discovery purposes. No implication therefrom is to be drawn that the Panel considered the collateral claims against Drexel to be related to the discrete Delaware litigation concerning the enforceability of the terms of the Indentures by public investors.

Should HSN later attempt again to impinge on the control by this Court of the consolidated or coordinated discovery in MDL Dkt. No. 732, which presently includes the fraud claims against Drexel, et al., any such attempt in another court might properly suggest an issue which this Court could adequately address in the preservation of its jurisdiction. *See* 28 U.S.C. § 2283.

The motions before the Court are accordingly denied in all respects.

SO ORDERED.